### City of Paris v. B. B. Sturgeon.

#### Decided April 30, 1908.

**1.—Injunction—Appeal.**

In an appeal from an interlocutory order granting an injunction, taken under the Act of April 16, 1907 (Laws, 30th Leg., p. 206), the case is to be determined on the pleading and evidence before the trial court when the injunction was granted, and answer and affidavits filed after the order was made can not be considered; the Act confers only appellate jurisdiction.

**2.—Injunction—Pleading.**

Pleading in support of an injunction is to be taken most strongly against the petitioner seeking such relief, and must negative every reasonable inference arising from the facts stated which might defeat the right claimed.

**3.—Same—City—Contract to Supply Water—Non-resident.**

A city has no power, under the general incorporation law, to contract to furnish water to one residing outside the city limits and for use beyond those limits. Nor did the city of Paris possess such power under its Special Charter granted by the Act of March 15, 1905 (Special Laws, 29th Leg., p. 31), which prohibited the extension of such rights to persons living beyond its limits.

**4.—Same—Case Stated.**

A petition seeking to enjoin a city from disconnecting plaintiff with its water system, though alleging generally a connection made at petitioner's expense and a valid contract by the city to furnish him water, was insufficient to support the right to injunction where it showed that plaintiff's premises were situated partly within and partly without the city limits, and that the meter was placed on the part of such premises within them, but failed to allege that the plaintiff resided and that the water was to be used within such limits.

Appeal from the District Court of Lamar County. Tried below before Hon. Ben. H. Denton.

*Edgar Wright,* for appellant.—Contract of a municipality, city or town to furnish use of its public utilities to a person living without its limits is ultra vires and void, unless such power is expressly conferred

by charter or general law. Wood v. City of Victoria, 18 Texas Civ. App., 573.

There being no allegation in the bill that in October, 1904, the city of Paris was authorized by charter to contract to supply plaintiff with water, and also no allegation that plaintiff was living within the corporate limits, under section 252 of the special law of the 29th Legislature which became effective on 5th day of March, 1905, and which provided that all courts should take judicial notice thereof, plaintiff was not entitled to any relief, because he did not live within the limits of the corporation. Chapter 6, pages 31·to 92, inclusive, of special laws of 29th Legislature of State of Texas incorporating the city of Paris, and sections 273 and 252 thereof.

Even if it should be held that at the time alleged by plaintiff, the city of Paris was authorized by special charter provision to supply persons living without its limits with water, and contracted to so supply plaintiff, such contract conferred no vested right in plaintiff, but was subject to the reserved power of the State to abridge, modify, change or abolish the same by subsequent amendment of the charter, and same was abolished by the passage of the special Act of the 29th Legislature granting a new charter and prohibiting the supplying of water to those living without the corporate limits. Article 1, section 17, of the Constitution of State of Texas; Storrie v. Houston City St. Ry. Co., 92 Texas, 139; Sioux City Street Ry. Co. v. Sioux City, 138 U. S., 98; Spring Valley Water Works v. Schottler, 110 U. S., 347.

*Dudley & Dudley*, for appellee.—After alleging a contract with appellant legal and binding, the petition alleges: "That in pursuance of said contract and permit, the defendant having tapped one of the water mains and extended its connection up to and on to the property of this plaintiff, as above described, and in compliance with said contract, plaintiff went to great cost and expense in connecting and completing the connection with defendant's public water system, and extending same on to his property, in laying pipes, putting in water meter and hydrants, within the corporate limits of said defendant and on the property of plaintiff." Then follows the allegation of paying the water bills and complying with all the regulations of the city, and the threatening and preparation of the city to cut off the water from plaintiff's premises and deprive him of the use of the same and remove the said water connection from off plaintiff's property. This is such an irreparable injury as entitled him to an injunction. Cleburne Water Co. v. City of Cleburne, 13 Texas Civ. App., 141, and authorities cited; Rio Grande R. R. v. Brownsville, 45 Texas, 88 (see specially last paragraph of opinion on p. 96); Indianola v. Gulf, W. T. & P. Ry. Co., 56 Texas, 594 (especially the second paragraph on p. 603); Mayor of Houston v. Houston, B. & M. P. Ry. Co., 84 Texas, 581; McEntee v. Kingston Water Co., 165 N. Y., 27; City of Burlington v. Burlington Street Ry. Co., 49 Iowa, 144.

WILLSON, CHIEF JUSTICE.—This is an appeal prosecuted as permitted by section 2 of the Act approved April 16, 1907 (General Laws, p. 206), against an order made by the district judge on an ex parte

hearing in vacation, granting a writ of injunction as prayed for by appellee. It was alleged in the petition for the writ that appellant was a municipal corporation operating under a special Act of the Legislature approved March —, 1905; that it owned and operated for hire a system of water works by means of which it supplied its citizens and customers with water; that the petitioner owned a small tract of land situated partly within and partly without the corporate limits of the city of Paris, on which the petitioner with his family resided; that on the — day of October, 1904, the petitioner applied to and contracted with the city for water to be used on his said premises; that in compliance with his contract he paid to the city —— dollars, and went to great cost and expense in connecting and completing a connection with the city's water system and extending same on to his property; that the meter used for measuring the water furnished to him by the city was placed on the part of his premises within the corporate limits; that the city at the time it received his money for making the connection with its water system, knew his purpose was to obtain its water for use on his said property; that he had complied with all the city's rules and regulations, and paid the city for its water as it had requested; that notwithstanding he had "a legal and binding contract" with it to furnish him water, it was threatening and preparing to disconnect and take up and remove the connection of its water system with his property and to wholly and permanently deprive him of the use of its water; and that if it was permitted to carry out its threat the value of his property would be greatly impaired and he would be greatly inconvenienced and annoyed, to his irreparable damage. The prayer was for a writ of injunction restraining the city and its agents from "molesting, disconnecting or cutting off its water connection with and from" the petitioner's property, and "from interfering in any manner with said water connection, or molesting the plaintiff in the use and benefit of same in any way." The petition with the judge's fiat endorsed thereupon was filed with the clerk March 30, 1908. On the same day the writ was issued as prayed for and service thereof had on officials of the city. April 2, 1908, the city filed its answer, and on the same day gave notice of an appeal to this court from the order granting the writ. The transcript was filed with the clerk of this court on April 4, 1908. April 7, 1908, appellee filed his motion to strike appellant's answer from the record, on the ground that, having been filed with the clerk of the lower court after the order granting the writ had been made, it was not before nor considered by the judge at the time the writ was granted. Because of the provision in section 3 of said Act approved April 16, 1907, that such a case should be heard in an Appellate Court "on the bill and answer, and such affidavits and evidence as may have been admitted by the judge granting or dissolving such injunction," by an order made April 9, 1908, we overruled the motion and refused to strike out appellant's answer. As the result of further consideration of the question urged by the motion, we have concluded that we erred in overruling it. If the Act referred to were capable of no other construction than one requiring an Appellate Court, in passing upon the appeal provided for, to consider as a part of the case pleading and evidence not before the judge at the time he made

the order granting such a writ, to that extent we would doubt its validity. It perhaps is true that the Legislature has the power to confer other than appellate jurisdiction upon Courts of Civil Appeals. But if it has such power, a clear intent to exercise it should appear before such courts should assume other than the jurisdiction to review proceedings in trial courts given by the Constitution. The Act in question, we think, does not evidence such an intent. If the language used should be construed as indicating such an intent it would have to be construed as evidencing as strongly an intent to also confer upon the Supreme Court other than a revisory jurisdiction. The language is: "And the case may be heard in the said courts," that is, the Courts of Civil Appeals and the Supreme Court, "on the bill and answers, and such affidavits and evidence as may have been admitted by the judge granting or dissolving such injunction." We think the Act should be construed as authorizing this court and the Supreme Court to consider the answer and affidavits and evidence only when same constituted a part of the case before the judge at the time he made the order appealed from. Where the order is made after notice and on a hearing of both sides, the pleadings and evidence heard by the judge should be considered here. But where the hearing by the judge is ex parte and the order is made on the allegations in the petition alone, as in this instance, we think this court in reviewing the action of the judge should consider the petition alone. To do otherwise would not be to review the action of the court on the case before him, but in effect would be to exercise here an original jurisdiction possessed by the District Court alone, and try the case anew on other pleadings and evidence. This, we are sure, we should not do. Therefore in disposing of this appeal we will look to the petition alone in determining whether the action of the judge in granting the writ was erroneous or not.

Appellant insists that the petition was insufficient because it did not appear from its allegations that appellee's premises were situated within the city limits, nor that he was an inhabitant of the city, and because it did not appear from said allegations that the city was authorized to furnish to persons not inhabitants thereof water for use outside of its limits.

"The rule of pleading," said the court in Harrison v. Crumb, 1 A. C. C., sec. 992, "that the statements of a party are to be taken most strongly against him, is reenforced in injunction suits by the further requirement that the material and essential elements which entitle him to relief shall be sufficiently certain to negative every reasonable inference arising upon the facts so stated, from which it might be deduced that he might not, under other supposable facts connected with the subject, thus be entitled to relief." And see Gillis v. Rosenheimer, 64 Texas, 246, where the rule as stated is approved; Cotulla v. Burswell, 54 S. W., 615; Martin v. Sykes, 25 Texas Sup., 198; 10 Ency. Plead. & Prac., pp. 923 to 927. Measuring the allegations by this rule, we think it should be said that the petition shows (1) that the tract of land on which appellee resided was partly within and partly without the city limits, and (2) that by an arrangement had with the city in October, 1904, its water was piped to his premises, and a hydrant and

meter placed on that portion of his premises situated within the corporate limits; and also that it must be said that the petition fails to show (1) that at the time he arranged for the water, or at any other time, appellee was an inhabitant of the city; (2) that that portion of the premises on which he actually resided was within the city limits; (3) that any use requiring the city's water service was being made by appellee of that portion of his land situated within the city limits; and (4) that the city had any power to bind itself by a contract to supply water to one not an inhabitant, for use beyond its limits.

The arrangement by appellee for the city water was alleged to have been made in October, 1904. There is no allegation that the city then had authority to contract to furnish water to persons living beyond its limits for use beyond its limits. If we can say as matter of law that the city had such authority, the failure to allege its existence would be immaterial, and would not operate to defeat the relief prayed for. But if we can not so say, then it would follow, we think, that we should hold that the writ was improvidently granted. For the relief prayed for could not be predicated on the fact that appellee was an inhabitant of the city, in the absence of an allegation that he was such an inhabitant. Nor could it be predicated on the allegation that a portion of his premises were within the city limits, in the absence of further allegations showing that such portion was being used for a purpose entitling him to the use of the city water. The facts which entitled him to the relief prayed for must have affirmatively appeared from the allegations in his petition.

We are not advised by any averment in the petition whether the city at the time appellee alleges it contracted to furnish him water was operating under the general incorporation Act or under the provisions of a special charter. Indeed, it is only by inference from allegations of a general nature that it can be said the petition shows that the city was then incorporated at all. In this condition of the record, if we should assume that the city was then incorporated, we think we would have further to assume that it was operating under the general incorporation law, and look to it for evidence justifying us in concluding as matter of law that the city had the authority so to contract. City of Paris v. Tucker, 101 Texas, 99; Wright v. San Antonio, 50 S. W., 406; Hailes v. State, 9 Texas Cr. App., 170; Ex parte Bowen, 34 Texas Cr. Rep., 109. For it is clear that in the absence of authority conferred upon it by the charter under which it acted, or by other legislative act, it had no power so to contract. A municipal corporation can exercise only such powers as are expressly or impliedly conferred upon it by its charter or other legislative act, when strictly construed. And as a general rule, it may be said that a person dealing with such a corporation and assuming that it has a power it does not possess, will not be protected because he may have performed his part of the undertaking. He is bound to know the extent of its powers, and if it fails to comply with an engagement to him which it had no power to make, he can not complain. Cooley's Const. Lim., pp. 191 to 196, 213; 3 Abbott's Mun. Corp., secs. 890, 971; 4 id., sec. 971; 1 id., sec. 249; Pye v. Peterson, 45 Texas, 314; Davis v. Burney, 58 Texas, 367; Cleburne v. Gulf, C. & S. F. Ry. Co., 66 Texas, 461;

Waterbury v. Laredo, 60 Texas, 519. Looking, then, to the general incorporation Act, we find that the power conferred upon the city was "to provide, or cause to be provided, the city with water, to make, regulate and establish public wells, pumps and cisterns, hydrants and reservoirs, in the streets or elsewhere, within said city, or beyond the limits thereof, for the extinguishment of fires and the convenience of the inhabitants, and to prevent the unnecessary waste of water." Sayles' Stat., art. 418. It will be observed that the power conferred is to provide the city with water and to establish hydrants, etc., for the convenience of its inhabitants. No power is conferred to provide any other territory than that embraced within the city with water, nor is any power to establish hydrants, etc., for the convenience of other persons than its inhabitants conferred upon it. This being true, we think it must be said that the city was not authorized to contract to furnish to one not an inhabitant of its territory water for use outside of its territory. It follows, we think, that the petition—in failing to show that appellee was an inhabitant of the city, or that he required the water for use within its limits—failed to state a case authorizing the relief prayed for. We have been referred to and have found no authority directly in point on the question involved. In Wood v. City of Victoria, 46 S. W., 287, the plaintiff sought to enjoin the city from supplying water to a gin company operating outside of the city limits, on the ground that the city had no power to furnish water to one not an inhabitant of its territory, nor at a place beyond its limits. The city was incorporated under the general law. In disposing of the appeal the court did not find it necessary to decide the point, but referring to it said: "We are inclined to concur with the court below that the contract with the city of Victoria and the gin company is one not authorized by law, and is *ultra vires.*" If it should be conceded that the power to own and operate such utilities for the use of persons or property living or situated beyond its limits could be conferred upon a municipal corporation, that such power has been conferred we think should be conceded only when a clear intent to confer it is evidenced by the legislative act. An exercise of such power goes beyond the purposes for which such incorporations exist, and strong reasons might be urged why it should not be conferred.

Appellee insists that he was entitled to the relief granted, because it affirmatively appeared from the allegations in his petition that a part of the premises on which he resided was situated within the city limits. In support of his contention appellee argues that the rule applied in homestead cases should be applied here, and for a statement of that rule refers us to Wilder & Co. v. McConnell, 91 Texas, 600. There a rural homestead had been included in an extension made of city limits. A portion of the four acre block claimed as the homestead was levied upon by virtue of an execution against the owner. The ruling was that on the facts shown by the record, it could not be said as matter of law that the portion of the four acres levied upon was not a part of the homestead. In its discussion of the question the court said that property might be situated within the .corporate limits of a town and yet be a rural homestead within the meaning of the Constitution, and that a rural homestead within a city might be changed

by act of the owner, or, within the terms of the law, by the act of the city, without his consent, into an urban homestead. The effect of the decision merely was to hold that whether a rural homestead after being included within the boundaries of a city had become an urban homestead within the meaning of the Constitution or not, was a question which could not be answered without reference to the facts of the particular case. We do not think the ruling there made can be held to have any application to the question in this case. The right of a city to exercise its corporate powers beyond its limits is a question purely and simply of law which can be answered without reference to the facts of the particular case. It is a question of power. If the power exists, it exists in all cases. If it does not exist, it does not exist in any case. If the power exists, the city could as well furnish water for use ten miles beyond its boundaries as it could for use ten feet beyond its boundaries. If the power does not exist, the right to furnish water for use ten feet beyond its boundaries is as wholly lacking in the city as would be the right to furnish it for use ten miles beyond its boundaries.

We have not overlooked the allegation in appellee's petition that at the time his suit was filed he had a "legal and binding contract" with appellant to furnish him water. If he then had such a contract it could not have been the result of any transaction with appellant after it began operation in 1905, under the charter granted to it by the Act of March 15, 1905 (Special Laws, p. 31), because that Act expressly declared that appellant should "not have the right or power to grant, extend or sell the use, enjoyment and benefit of any public utilities established, owned or operated" by it to any person living beyond its limits. Section 252, p. 87, Special Laws, 1905. We have already determined that under the general incorporation Act he could have acquired no such contract.

The order of the judge granting the writ will be vacated, and the injunction will be dissolved. The cause will be remanded to the court below for a trial upon its merits, or such further other proceedings as may be had therein.

*Injunction vacated and cause remanded for trial on merits.*
Writ of error refused.