KANSAS CITY, M. & O. RY. CO. OF TEXAS
v. COLE et al.†

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 24, 1912. Rehearing Denied March 30, 1912.)

1. RAILROADS (§ 194*)—INSOLVENCY—SALE OF ASSETS—REORGANIZATION—LIENS.

Sayles' Ann. Civ. St. 1897, art. 4584d, provides that every judicial or other sale of a railroad which shall discharge the property from liability in the purchasers' hands for claims for damages, unsecured debts, or junior mortgages against the railroad company shall annul all claims of stockholders to share in the stock of the railroad, and it shall not be lawful for the purchasers, or any reorganized company, to issue any stock in lieu of the old stock, or to allow compensation therefor in any manner; nor shall all or any part of the debt, to satisfy which the sale is made, be continued or held as a claim or lien on the property. *Held* that, where a railroad company contracted, in consideration of plaintiffs' providing a right of way through a county and purchasing certain of its stocks and bonds, to locate its general offices, machine shops, etc., and maintain the same at S., but such company's property was thereafter sold on foreclosure, and was ultimately purchased by defendant, a bill to restrain defendant from removing its offices, shops, etc., to another city, merely alleging that defendant recognized, ratified, adopted, and acknowledged its obligation to carry out the original contract, but failing to allege that the bonds held by complainants were a lien on defendant's property, or that the sale of the property then held by defendant was made subject to any obligation of the old company, or to any liens on the property sold, or that defendant had ever legally bound itself to discharge any of the obligation of the original railway company, was fatally defective.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 643–655; Dec. Dig. § 194.*]

2. RAILROADS (§ 196*)—CONTRACTS—CANCELLATION—STATUTES—FORECLOSURE SALE.

Under Sayles' Ann. Civ. St. 1897, art. 4584d, providing that a foreclosure sale of a railroad's property shall relieve the property from liability in the hands of purchasers for damages, unsecured debts, or junior mortgages and claims of stockholders, etc., a judicial sale of a railroad company's property relieved the reorganized railroad, taking under such sale, of liability on a contract with citizens of a municipality to maintain its general offices, shops, etc., in that city.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 659–661; Dec. Dig. § 196.*]

3. RAILROADS (§ 196*)—REORGANIZATION—ACTION—PETITION.

In a suit against a reorganized railroad to restrain the alleged violation of a contract between complainants and defendant's predecessor, an allegation that complainants acquired stock in an intermediate company in satisfaction of stock bought by them of the initial company, and in satisfaction of prior liens, did not allege that such liens covered property of the original corporation, and that the sale thereof to the citizens of S. and their sale to defendant were made subject to such lien, so as to entitle complainants to enjoin the removal of division headquarters, which the original company had located in S.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 659–661; Dec. Dig. § 196.*]

Appeal from District Court, Nolan County; Jas. L. Shepherd, Judge.

Suit by S. A. Cole and others against the

---

Kansas City, Mexico & Orient Railway Company of Texas. From an order granting a temporary injunction against defendant's removal of its general offices, machine shops, roundhouse, etc., from the town of Sweetwater, defendant appeals. Reversed.

J. McD. Trimble and J. A. Eaton, both of Kansas City, Mo., H. S. Garrett, of Sweetwater, C. C. Higgins, of Snyder, and Blanks, Collins & Jackson and Hill, Lee & Hill, all of San Angelo, for appellant. R. C. Crane and Beall & Beall, all of Sweetwater, and Stephens & Miller, of Ft. Worth, for appellees.

DUNKLIN, J. The Kansas City, Mexico & Orient Railway Company of Texas has appealed from an order, made by the judge of the Thirty-Second judicial district, granting a temporary writ of injunction restraining the removal of its general offices, machine shops, roundhouse, and other divisional facilities from the town of Sweetwater, and requiring a return to Sweetwater of such facilities as had theretofore been removed from Sweetwater, and further restraining the appellant from so amending its charter as to permit such a removal. The injunction was granted at the instance of S. A. Cole, R. A. Ragland, J. H. Beall, and Ellis Douthit, executor of the estate of J. S. Douthit, deceased, plaintiffs in the suit, who prayed that the temporary injunction sought should, upon final hearing, be made perpetual; and the injunction was the only relief prayed for in plaintiffs' petition. The fiat of the judge, granting the temporary injunction was indorsed on the back of the petition upon the same date the petition was filed, and it is apparent that the writ was granted upon the allegations in the petition, which had been verified by one of the plaintiffs without notice to the defendant, and without giving defendant an opportunity to be heard in answer to the petition.

This suit is predicated upon article 4367, Revised Statutes 1895, which reads: Every railroad company chartered by this state, or owning or operating any line of railway within this state, shall keep and maintain permanently its general offices within the state of Texas at the place named in its charter for the locating of its general offices; and if no certain place is named in its charter where its general offices shall be located and maintained, then said railroad company shall keep and maintain its general offices at such place within this state where it shall have contracted or agreed or shall hereafter contract or agree to locate its general offices for a valuable consideration; and if said railroad company has not contracted or agreed for a valuable consideration to maintain its general office at any certain place within this state, then such general office shall be located and maintained at such place on its line in this state as said railroad companies may designate to be on its line of railway. And such railroads shall keep and maintain their machine shops and round houses, or either, at such place or places as they may have contracted to keep them for a valuable consideration received; and if said general offices and shops and round houses, or either, are located on the line of a railroad in a county which has aided said railroad by an issue of bonds in consideration of such location being made, then said location shall not be changed; and this shall apply as well to a railroad that may have been consolidated with another as to those which have maintained their original organization."

We have reached the conclusion that plaintiffs' petition is fatally defective as against a general demurrer. It is quite voluminous, covering 20 typewritten pages in the transcript; but the material issues presented can be briefly stated. According to allegations therein, plaintiffs, together with other citizens of Sweetwater, purchased stock and bonds of the Colorado Valley Railway Company, chartered under the laws of the state of Texas, paying an aggregate consideration of $100,000 therefor, and procured for the company a right of way through Nolan county at a cost of $5,000 to those citizens, in consideration for a contract and agreement by that company with plaintiffs and the citizens of Sweetwater generally, acting through a committee, that it would construct its railway from Sweetwater through Nolan county, instead of from Colorado City through Mitchell county, as theretofore planned, and that it would establish and always maintain its principal offices, machine shops, and roundhouse in Sweetwater, instead of in the town of Robert Lee, as formerly contemplated. In compliance with this contract, the Colorado Valley Railway Company did construct its line of railway through Nolan county to Sweetwater, where its principal offices, machine shops, and roundhouse were established and maintained, until that railway company became insolvent and unable to continue its business. Thereafter plaintiffs and other citizens of Sweetwater, who had so purchased stock and bonds of said railway company, and had procured for it the right of way through Nolan county, planned a reorganization of the railway company, for the purpose of fulfilling the foregoing contract of said company, and in furtherance of that plan appointed a committee, vested with authority to institute a suit for a judicial decree of foreclosure to sell all the charter rights, privileges, and properties of said company, to purchase the same at such sale, and to charter a new corporation, for the purpose of taking over the same. Exercising the authority so vested in them, the committee did cause a suit to be instituted in the district court of Nolan county, which court appointed a receiver of the property and decreed the foreclosure sale contemplated; and at the sale made under and by authority of that decree the committee purchased all the

charter rights, privileges, and properties of the Colorado Valley Railway Company for the use and benefit of plaintiffs and other citizens of Sweetwater who had purchased stocks and bonds of the company under its contract, noted above. After this sale, the purchasers procured a charter, under the laws of the state of Texas, for a railway company under the name of the Panhandle & Gulf Railway Company, for the purpose of fulfilling said contract which the old company had entered into relative to the location and maintenance of shops, offices, and roundhouse in Sweetwater, and that company afterwards, by amendment of its charter, changed its name to that of the Kansas City, Mexico & Orient Railway Company of Texas, the defendant in this suit. Plaintiffs instituted this suit in their individual rights and solely for their individual benefit. It was further alleged that said contract was made for the benefit of the city of Sweetwater and all its citizens.

The following articles appear in Sayles' Civil Statutes:

Article 4549: "In case of the sale of the entire road-bed, track, franchise and chartered right of a railroad company, whether by virtue of an execution, order of sale, deed of trust or any other power, the purchaser or purchasers at such sale and their associates, shall be entitled to have and exercise all the powers, privileges and franchises granted to said company by its charter, or by virtue of the general laws; and the said purchaser or purchasers and their associates shall be deemed and taken to be the true owners of said charter and corporators under the same, and vested with all the powers, rights, privileges and benefits thereof, in the same manner and to the same extent as if they were the original corporators of said company; and shall have power to construct, complete, equip and work the road upon the same terms and under the same conditions and restrictions as are imposed by their charter and the general laws."

Article 4550: "In case of any such sale heretofore or hereafter made of the road-bed, track, franchise or chartered right of a railway company or any part thereof as mentioned in article 4549, the purchaser or purchasers thereof and their associates shall be entitled to form a corporation under chapter one of this title, for the purpose of acquiring, owning, maintaining and operating the portion of the road so purchased as if such road or portion of the road were the road intended to be constructed by the corporation, and when such charter has been filed the said new corporation shall have all the powers and privileges conferred by the laws of this state upon chartered railroads, including the power to construct and extend; provided, that notwithstanding such incorporation the portion of the road so purchased shall be subject to the same liabilities, claims and demands in the hands of the new corporation as in the hands of the purchaser or purchasers of the sold-out corporation; provided, that by such purchase and organization no rights shall be acquired under any former charter or law in conflict with the provisions of the present Constitution in any respect, nor shall the main track of any railroad once constructed and operated be abandoned or removed."

Article 4584d: "Every judicial or other sale of any railroad in this state hereafter made, which shall have the effect to discharge the property so sold from liability in the hands of purchasers for claims for damages, unsecured debts, or junior mortgages against such railroad company so sold out, shall have the effect to annul and cancel all claims of every stockholder therein to any share in the stock of such railroad; and it shall not be lawful for said purchasers or for any railroad company organized hereafter to operate said railroad, to issue any stock in lieu of the old stock or to allow any compensation therefor in any manner whatever, nor shall all or any part of the debt to satisfy which such sale is made be continued or held as claim or lien on said property."

[1] The petition contains no allegations that the bonds purchased by them and other citizens in the Colorado Valley Railway Company were secured by liens upon any of the property of that company; nor that the sale under the decree of court was made subject to any obligation of the old company or any liens upon the property sold; nor that either the Panhandle & Gulf Railway or the defendant company ever legally bound itself to discharge any of the obligations of the original railway company. If such bonds were secured by a lien on the property, presumably such lien was foreclosed in the foreclosure decree. Nor is there an allegation that the purchasers at the judicial sale legally bound themselves to discharge any obligation of the old company. The allegation in the petition that the new company "recognized, ratified, adopted and often acknowledged their obligations to carry out" the contract of the Colorado Valley Railway Company relative to the maintenance of its general offices, shops, and roundhouse at Sweetwater, is the only allegation made to show an obligation upon the part of the new company to do so. Such an allegation, at best, is but an allegation of a unilateral contract, with no consideration shown to support it, and hence not legally binding upon the new company. And the same construction must be given to other allegations that the citizens who purchased at the judicial sale did so for the purpose of fulfilling the contract, above noted, of the Colorado Valley Railway Company with plaintiffs and other purchasers of its stock and bonds. Nor did the fact that the foreclosure suit was a

friendly suit, and the fact that the same was instituted for the purpose of selling out and purchasing the property of the old company, in order to reorganize that company into a new company, have the effect to render the new company one · and the same with the Colorado Valley Railway Company. The old company and the new company are separate entities in law, so far as the question at issue now under consideration is involved. It was incumbent upon plaintiffs to show a clear right in equity to the sweeping injunction which was issued. Paris v. Sturgeon, 50 Tex. Civ. App. 519, 110 S. W. 459, and authorities there cited.

[2] Tested by this rule, we think it should be held that the judicial sale noted of all the charter rights and property of the Colorado Valley Railway Company had the effect to discharge the property so sold from the contract of the "sold-out company" to maintain its principal offices, shops, and roundhouse at Sweetwater, and that all the provisions of article 4584d of the statute, quoted above, should apply. Even under articles 4549 and 4550, no right of action in plaintiffs was shown, in the absence of a showing that the bonds of the old company purchased by plaintiffs were secured by some character of lien on the property sold under the decree of court, or that the property, while in the hands of the purchasers at that sale, was, for some other reason, subject to the contract in question, or that the defendant in some manner became legally bound to perform that contract, which was a personal obligation only. Williams v. Tex. Mid. Ry. Co., 22 Tex. Civ. App. 278, 55 S. W. 130, and decisions therein cited; G., C. & S. F. Ry. Co. v. Newell, 73 Tex. 334, 11 S. W. 342, 15 Am. St. Rep. 788; McLean & Dilden v. Brick Co., 128 S. W. 442.

According to other allegations in the petition, the defendant company contracted and agreed with the city of Sweetwater to maintain permanently its principal offices, machine shops, and roundhouse in that city. The consideration paid by the city for this contract by defendant was the granting of a right of way for the railway over certain streets in the city and the purchase by the city of a right of way over certain private property. No privity is shown between the defendant and plaintiffs in this contract, although plaintiffs are citizens of that city. Appellant calls our attention to the case of Kansas City, Mexico & Orient Ry. Co. v. City of Sweetwater, decided by this court, and reported in 131 S. W. 251, and later decided by our Supreme Court and reported in 137 S. W. 1117, and insists that the records in that suit show that the same contract now under consideration was the basis of the claim made by the city of Sweetwater in that suit for an injunction to restrain the removal of the same offices, shops, and roundhouse from said city, and that, as the final judgment rendered in that suit was adverse to the city, we should take judicial notice of the records in that case on file in this court, and should hold the final judgment rendered in that suit to be a bar to the right of action asserted in this suit, in so far as it is based upon the contract now under consideration. We deem it unnecessary to determine the merits of this contention; for it is clear to us that plaintiffs cannot invoke that contract as a basis for the relief sought in this suit, as any right of action on that contract is vested solely in the city. Decisions are numerous in this state supporting this conclusion. See House v. Houston Waterworks, 88 Tex. 233, 31 S. W. 179, 28 L. R. A. 532; Railway v. Colburn, 90 Tex. 230, 38 S. W. 153; Lenzen v. New Braunfels, 13 Tex. Civ. App. 335, 35 S. W. 342; Cleburne Water Co. v. Cleburne, 13 Tex. Civ. App. 141, 35 S. W. 733; Hulse v. Powell, 21 Tex. Civ. App. 471, 51 S. W. 862.

[3] Plaintiffs alleged, in substance, that they acquired stock in the Panhandle & Gulf Railway Company in satisfaction of stock held by them in the Colorado Valley Railway Company, and "in satisfaction of prior liens." But it is not alleged what property was covered by such prior liens; nor for what debts they were incurred; nor when, nor by whom, nor how, the liens arose. We do not think this vague allegation sufficient to show that such "prior liens" covered the property owned by the Colorado Valley Railway Company, and that the sale of the same to the citizens of Sweetwater, and the sale by those citizens to the defendant, were all made subject thereto. The issuance of stock in the new company, in consideration of the surrender of stock in the old company, was expressly forbidden by article 4584d, quoted above. At all events, the allegations that the Colorado Valley Railway Company was insolvent, and that all its property was sold under the judicial decree, in order to settle its debts, without any allegation that the stock in that company was valuable in spite of those conditions, is a showing, prima facie, that the stock which plaintiffs owned in the old company and transferred to the new company was worthless, and insufficient as a consideration to support an action for specific performance of the contract now under consideration. Anderson v. Oldham, 82 Tex. 233, 18 S. W. 557; Paris v. Sturgeon, 50 Tex. Civ. App. 519, 110 S. W. 459. This conclusion renders it unnecessary to determine the further question which has occurred to some of us, namely, whether or not the defendant's contract with plaintiffs to always maintain its general offices, shops, and roundhouse at Sweetwater, in consideration of plaintiffs' agreement to subscribe for stock in defendant corporation, was ultra vires and unenforceable by plaintiffs, in view of the statutes authorizing a railway company to amend its charter, and in view of article 4386 of Revised Statutes, vesting all the corporate powers of a railroad corpora-

tion in its legally constituted board of directors. See 10 Cyc. 411–413. In order to solve that question in the affirmative, it might become necessary to hold that article 4367, Revised Statutes, quoted above, could not be invoked by one who has paid no consideration for the contract by the railway company to so maintain its general offices, shops, and roundhouse at a particular place, except to subscribe for stock in the railway company. But we express no opinion upon this question. No special injury to plaintiffs' stock· in the new company, separate and distinct from other stock, was alleged; nor did the petition contain an allegation that plaintiffs had first applied to the board of directors of the company to prevent the threatened injury of which complaint was made in the petition.

For the reasons noted, the order granting the temporary writ of injunction is set aside, and said writ vacated, and this order will be certified to the trial court for observance.