## SNEED et al. v. ELLISON et al.
### No. 4760.

Court of Civil Appeals of Texas. Amarillo.
March 7, 1938.

Rehearing Denied May 23, 1938.

T. L. Price, of Post, and Adkins, Pipkin, Madden & Keffer, of Amarillo, for appellants.

R. L. Graves, of Brownfield, for appellees.

FOLLEY, Justice.

The parties herein shall carry their trial court designation. This is a suit for an injunction originally instituted on June 25, 1936, by the plaintiff, J. B. Sneed, in the district court of Yoakum county, Tex., against Joe B. Ellison, sheriff and tax collector of said county. By a supplemental petition the plaintiff made the county judge and county commissioners of Yoakum county parties defendant. The plaintiff sought to restrain the defendants from selling 125 head of cattle levied upon by Ellison as tax collector of Yoakum county for delinquent state and county taxes for the years 1930, 1931, and 1932. The First National Bank of Dallas and J. T. Sneed, Jr., of Potter county, intervened in said suit also seeking injunctive relief.

The plaintiff alleged that the defendant Ellison was about to sell the 125 head of cattle to satisfy delinquent taxes upon about 1,000 head of cattle. Plaintiff alleged that the cattle involved did not belong to him but were the property of his brother, J. T. Sneed, Jr., one of the interveners. He also asserted that the First National Bank of Dallas held a mortgage on the cattle to se-

cure the payment of a $3,000 note of the date of November 25, 1935, executed by the plaintiff and due and payable to said bank June 1, 1936; that the payment of said note had been assumed by J. T. Sneed, Jr., in a bill of sale of the date of November 26, 1935, from plaintiff to J. T. Sneed, Jr., in which bill of sale the plaintiff had sold to J. T. Sneed, Jr., about 270 head of cattle in Yoakum county. Plaintiff asserted that he had warranted the title to said cattle in the bill of sale to his brother and that the attempted sale by the tax collector would cause him to suffer an irreparable loss for which he had no adequate remedy at law. He further alleged that all the parties had agreed that the cause should be tried on its merits and he prayed that the defendants be enjoined perpetually from the sale of the 125 head of cattle.

The interveners adopted the pleadings of the plaintiff. The First National Bank of Dallas asserted its mortgage, as alleged by the plaintiff, and J. T. Sneed, Jr., asserted his ownership of the cattle. The bank tendered into court the sum of $186.25, which amount was shown to be the proportionate part of the taxes due upon the 125 head of cattle for the delinquent years, but the bank did not offer to pay the full amount of the taxes upon all the cattle other than the 125 head. The full amount of the taxes finally shown to be due amounted to the sum of $1,374.80. The interveners alleged that irreparable loss would result to them if the 125 head of cattle were sold and further asserted that they had no remedy at law to protect them from such loss. They also asked for an injunction as prayed for by the plaintiff.

The defendants entered their appearance and filed their answer upon the same day that the suit was filed. They alleged that during the years 1930, 1931, and 1932 the plaintiff had a considerable number of cattle in Yoakum county, amounting to 800 head in 1930, and 1,000 head in each of the years 1931 and 1932. After alleging the amount of taxes due upon the cattle for the three delinquent years, they asserted that Joe B. Ellison, tax collector and one of the defendants, had levied upon the cattle on June 13, 1936, when he had learned that all of the cattle were about to be removed from the county; that at the time the levy was made J. T. Sneed, Jr., pointed out to Ellison the 125 head of cattle upon which the levy was made and represented to the tax collector that such cattle were subject to the taxes demanded and that the 125 head were suffi-

cient in number to pay the taxes. They also alleged that at the time of the levy there were about 1,200 head of cattle on the Sneed Ranch in Yoakum county, including the 125 head involved therein, and that the taxes for 1936, although not due, were demanded of J. T. Sneed, Jr.; that in pursuance to said demand J. T. Sneed, Jr., executed a bond, as provided by law, for the payment of the 1936 taxes on all of the cattle on the ranch, the taxes for 1936 not being in controversy herein; that after J. T. Sneed, Jr., had pointed out the 125 head of cattle to Ellison, the former delivered to the latter the 125 head of cattle, whereupon Ellison released the 1,000 head of cattle to J. T. Sneed, Jr.

The cause was submitted to the court without the intervention of a jury. Judgment was entered on June 27, 1936, in favor of the defendants, denying the injunction and adjudging that the 125 head of cattle were subject to sale in payment of the taxes. From such judgment the plaintiff and interveners have perfected an appeal to this court and have executed a supersedeas bond to stay the execution of the sale of the cattle pending this appeal.

The trial court found taxes to be due in the sum of $1,374.80; that J. T. Sneed, Jr., claimed to be the owner of the cattle at the time Ellison made his levy; that J. T. Sneed, Jr., requested Ellison to deliver to him all the cattle except the 125 head levied upon, which the tax collector did; that J. T. Sneed, Jr., stated to Ellison at the time of the levy that the 125 head of cattle were liable for such taxes and would be sufficient to pay the same; that the First National Bank of Dallas claimed a lien upon 273 head of the cattle to secure the note described; that neither the value of the 125 head of cattle held by the tax collector nor the value of the remainder of the cattle was shown by any evidence; and that J. B. Sneed testified that some of the cattle out of the 125 head were liable for the taxes. The court concluded that the taxes were a legal demand; that on account of the acts and representations of J. T. Sneed, Jr., he was in no position to complain; and that, since the First National Bank of Dallas failed to allege or show that the mortgaged cattle over and above the 125 head were not of sufficient value to protect the bank from injury, no injury could be claimed by the bank by reason of the tax collector's holding or selling the 125 head of cattle for such taxes.

In the judgment proper the court further found that the tax collector, learning that the Sneed cattle were about to be removed, levied upon about 1,200 head of cattle and released all of said cattle except 125 head upon the representations of J. T. Sneed, Jr., substantially as set out in his findings of fact. He further concluded that said cattle were subject to sale by the tax collector for the payment of all the taxes.

The notice of sale of the tax collector shows that only 125 head of cattle were about to be sold. It makes no reference to any other levy and Ellison testified that he actually levied upon only 125 head. He also testified, however, that he was about to levy upon all the cattle at which time Joe T. Sneed, Jr., pointed out to him the 125 head of cattle. He also testified that he made his levy upon these cattle and then permitted Joe T. Sneed, Jr., to remove the other 1,000 head of cattle.

The plaintiff and interveners contend that the testimony shows at the time of the levy that all of the cattle on the Sneed ranch belonged to J. T. Sneed, Jr., and that J. B. Sneed had no interest in them. They also assert that the First National Bank's mortgage was superior to any lien that might have been established by the levy, and that by reason of all these facts the court erred in refusing the injunction sought.

It is elementary that a party who seeks injunctive relief must both plead and prove such facts as will show that party entitled to such relief. The trial court is authorized to deny such relief upon the insufficiency of the testimony. Such insufficiency of testimony may arise either from the testimony offered or from the want of testimony. Injunctive relief is an extraordinary remedy and the party seeking it must show himself clearly to be entitled to it. On the question of the necessity of the pleading, which is the basis for the proof, we quote from the Supreme Court case of Gillis et al. v. Rosenheimer et al., 64 Tex. 243, as follows: "The petition for injunction should state all, and negative all, which is necessary to establish a right. The rule is correctly stated in Harrison v. Crumb, 1 White & W.Civ.Cas.Ct.App. § 991, as follows: 'The rule of pleading, that the statements of a party are to be taken most strongly against himself, is re-enforced in injunction suits by the further requirement that the material and essential elements which entitle him to relief shall be sufficiently certain to negative every reasonable

inference arising upon the facts so stated, from which it might be deduced that he might not, under other supposable facts connected with the subject, thus be entitled to relief.'"

■ In the instant case we are of the opinion that the plaintiff and interveners have failed to show themselves entitled to the relief which they sought. The record in this case shows that some 1,000 head of cattle were on the Sneed Ranch during the delinquent tax years and that some 1,100 or 1,200 head were on the ranch at the time of the levy. Ellison testified that he released to Joe T. Sneed, Jr., about 1,000 head of these cattle at the time he took possession of the 125 head. The record further shows that all of these cattle carried about the same brands. The plaintiff testified that the bank held the mortgage on all of the cows on the ranch and had so held a mortgage on all of them since 1929. However, the bank only introduced in evidence a mortgage covering 273 of these cattle. The plaintiff further testified that on November 26, 1936, he had sold about 270 head of these cattle to his brother, J. T. Sneed, Jr., and that his brother had assumed the payment of the $3,000 note due the bank. The plaintiff also testified that the day before, on November 25, 1935, he had sold to his brother 1,000 head of the cattle for which he received a promissory note in the sum of $50,000, which he transferred to the bank. The bill of sale from the plaintiff to J. T. Sneed, Jr., for the 270 head of cattle was introduced in evidence but no such bill of sale for the 1,000 head appears in the statement of facts. No witness undertook to testify that the 125 head of cattle held by the sheriff were the same cows covered by the bank's mortgage. J. B. Sneed being an interested witness, the court was not compelled to believe his testimony with reference to the sale of the cattle. Under the facts, as presented to him, we think he was authorized to assume that the cattle covered by the bank's mortgage were included in the 1,000 head of cattle removed from the ranch. In this connection, there is no testimony in the record that the bank did not give its permission for said cattle to be removed from the ranch and there is equally no testimony that they did not acquiesce in or agree that the sheriff might take the 125 head for the amount of the taxes.

■ The record is silent as to what became of the 1,000 head of cattle. Ellison testified that these cattle were removed from the ranch and that they were sold, but his testimony in regard to the sale would be distinctly hearsay, incompetent, and of no probative force. Only J. B. Sneed testified for the plaintiff and interveners and he did not undertake to reveal what became of the 1,000 head of cattle. It is apparent that 148 head of cattle covered by the bank's mortgage were not included in the levy of the tax collector. No showing is made as to the value of these 148 head of cattle, as to what they brought or who got the money from their sale. This is equally true of the balance of the 1,000 head. There is no showing made by the bank that it did not have ample security for its debt in the cattle other than the 125 head upon which the levy was made.

■■ We are of the opinion that the bank failed to prove by competent evidence that the $3,000 note was unpaid. The only testimony in regard to its payment was from J. B. Sneed, who stated the note was unpaid. At the time this suit was filed and at the time the testimony of J. B. Sneed was offered this note was past due. By Sneed's own testimony and by the bill of sale offered in evidence, J. T. Sneed, Jr., had assumed the payment of this note. It is highly possible, therefore, that J. T. Sneed, Jr., could have paid this note without the knowledge of J. B. Sneed. The note itself was not introduced in evidence and no witness for the bank testified that the same was not paid. J. B. Sneed's testimony in regard to its payment was rank hearsay, since his brother had become primarily liable upon the note. We think the court was authorized, under this state of facts, to disregard such testimony from J. B. Sneed.

■ We think the plaintiff, J. B. Sneed, is in no better position than the bank to complain of the trial court's action. He admitted on the witness stand that he owed the full amount of the taxes that the tax collector was attempting to collect. He made no offer to pay these taxes. His petition for injunction was based solely upon his warranty of the title to the cattle in the bill of sale to his brother. His contention was that if these cattle were taken in payment of the taxes that he would be compelled to reimburse his brother for their value. He was certainly under no greater obligation to his brother than he was to the tax collector. We can see no reason why it would have been any greater hardship on him to pay the taxes than it would to reimburse his brother. The plaintiff being in

default himself in regard to the taxes, we think he was in no position to seek injunctive relief. Upon the question of restraining a sheriff from collecting taxes alleged to be illegally assessed, the Supreme Court of Texas, in the case of Rio Grande Railroad Co. v. Scanlan, Sheriff, 44 Tex. 649, had this to say: "Although the tax may have been illegally assessed and the action of the sheriff in collecting it unauthorized, it does not follow that a court of equity will in all instances interpose to stay his action. A party asking for this extraordinary relief must have used all proper means to obviate the necessity of appealing to the court, and must not himself be in default."

As far as J. T. Sneed, Jr., is concerned, we think his acquiescence in the levy made by the tax collector and his agreement and statements in regard thereto have placed him in no better position than the other two parties to seek injunctive relief. The court found, in effect, that he agreed that the 125 head of cattle could be held by the sheriff for the taxes, which is supported by the testimony of the tax collector, and, having so agreed, we think he had no right to seek injunctive relief to prevent a sale to which he had agreed. Further than this, we think the testimony is just as deficient to show ownership in J. T. Sneed, Jr., of the 125 head of cattle as it is to show such cattle were covered by the bank's mortgage. The testimony of J. B. Sneed, the only testimony as to J. T. Sneed's ownership of the cattle, is subject to the same criticism with reference to J. T. Sneed's ownership as it is to the bank's mortgage. As has been stated above, the only bill of sale offered in evidence was for 270 cows of the date of November 26, 1935. The court was not compelled to take the uncorroborated testimony of J. B. Sneed, an interested witness, as being wholly true. Under the record as presented, we think the court was authorized to disregard the plaintiff's testimony in regard to the 1,000 head of cattle. It is possible that it appeared passingly strange to the trial court that J. B. Sneed sold $50,000 worth of cattle to his brother and received in return only a promissory note in the full amount of the purchase price. From such evidence the court may have formed the idea that that sale was a simulated transaction and that J. B. Sneed still owned at least 1,000 head of the cattle on the ranch at the time the levy was made. No finding of fact having been made by the trial court with reference to the ownership of any of the cattle, it is our

duty to resolve all such facts, or the absence of such facts, in favor of the validity of the judgment.

Finding no reversible error in the record, the judgment of the trial court is affirmed.