SIGN HANGERS, ERECTORS AND BUILDERS LOCAL NO. 1060, BROTHERHOOD OF PAINTERS, DECORATORS AND PAPERHANGERS OF AMERICA, v. LOCAL UNION NO. 716, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS.

No. 11002.

Court of Civil Appeals of Texas. Galveston.

Nov. 9, 1939.

Rehearing Denied Feb. 29, 1940.

Second Rehearing Denied March 21, 1940.

Russel A. Bonham, Mary Nan Bonham, and W. M. Latham, all of Houston, for appellant.

Sewall Myer, of Houston, for appellee.

GRAVES, Justice.

This general statement is taken from the appellant's brief:

"This is an appeal from an order sustaining a general demurrer to the petition of appellant, wherein the appellant sought a temporary injunction to enjoin the appellee from interfering with contracts in existence between appellant and employing-units and from demanding of such employing-units the hanging and erecting of signs in the City of Houston and vicinity, until final hearing of the cause-of-action; the main cause-of-action being for damages and for a permanent injunction, and to judicially determine a claimed trespass upon appellant-union's jurisdiction by the appellee-union,

both unions being affiliated with the American Federation of Labor.

"The temporary restraining order sought by appellant was not entered and the cause was set for trial or hearing upon the petition for temporary injunction, at which time, without hearing any evidence, the trial court entered its order sustaining the general demurrer of appellee.

"The general demurrer urged by appellee admitted all allegations contained in the petition, so that the only question before this court on appeal is whether or not a cause-of-action is stated.

"The trial court sustained appellee's general demurrer to the petition upon the theory that it is necessary to exhaust internal remedies within the union's parent-body. Appellee's attorney contended upon the argument that the allegations of appellant as to there being no internal remedies within the parent-organizations, or the American Federation of Labor, were not correct, in that there was a provision for determination of a jurisdictional controversy through the Building and Trades Construction Department of the American Federation of Labor, and the trial court, *under the general demurrer, and without hearing evidence,* so ruled."

The gravamen of appellant's complaints against the appellee are thus declared in its bill for the coveted writ:

"* * * that for a period of some months past the defendant union has trespassed upon the jurisdiction of the plaintiff union, and is now trespassing thereon; that defendant union has claimed the right to build, erect and hang all signs having any character of electrical work in connection therewith, and are now claiming such right, including especially 'Neon' signs and those signs having electrical lights of any character reflecting upon them; that plaintiff's members have at all times recognized the right of the defendant union members to do all electrical wiring, installation of electrical equipment and all items concerning electrical work in connection with such signs as built, installed or hung by plaintiff union, and plaintiff union members have claimed, and now claim the right and jurisdiction to build, erect and hang the signs, standards and all work pertaining only to their classification; that defendant union has heretofore notified all employers and contractors that defendant's members will not wire any signs having any type of electrical equipment therein or thereon unless the said signs are installed, erected, and hung by defendant union members; that plaintiff union members have lost their jobs, contracts and work because the respective employers have been compelled to leave their signs without electric lights thereon, or permit the defendant union to rebuild, rehand, and re-erect such signs by defendant members, in addition to defendant members doing the electrical wiring and installation therein and thereon; that by such action the defendant union has trespassed upon the jurisdiction of plaintiff union, and defendant's members have engaged and are now engaging in the trade of sign hanging, building, and erecting, without first becoming members of plaintiff union as provided in Sec. 11, Article IX, of the Constitution of their parent organization, the American Federation of Labor, as hereinbefore set forth in full.

"That the building, hanging and erecting of signs having some character of electrical lighting upon them make up approximately eighty-five per cent of the work of the members of plaintiff union, in that practically all signs displayed by any firm, business, or organization, or any person displaying any type of sign or advertising, at the present time are either of a 'Neon' character, or have a 'Neon' border thereon, or have a 'Reflector' light attached by means of a 'gooseneck' projection; that only about fifteen per cent of the work of the members of plaintiff union has to do with signs without any type of electrical wiring or lighting therein or thereon.

"That plaintiff union has at all times insisted that all signs, built, hung, erected, or in any manner handled, by its members be wired and completed as to electrical work by union-electricians, to-wit; the members of defendant union, and plaintiff's members have at all times refused to build, hang, or erect, or work, upon any signs upon which all work concerning the same is not done by the respective unions entitled to the work, particularly the electrical work to be done by members of defendant union; that the final work on all such signs having electrical equipment, wiring, or lighting, must necessarily be done by electricians, it being customary, necessary and proper to complete the final wiring thereof after installation; that thus, by the refusal of the defendant union to permit its members to do such final wiring thereon, such signs have been left incompleted, and the employers and contractors have thus been compelled to permit the defendant union to do the

work ordinarily and customarily theretofore done by plaintiff union members, as well as permit defendant union to do the wiring; that thus the plaintiff union's members have lost numerous contracts in the City of Houston and vicinity, and the action of defendant union has caused the employers and contractors to breach their contracts to and with plaintiff union; that the type of contract required of employers and contractors by plaintiff union is in accord with Exhibit 'A' hereto attached and made a part hereof, and is the type of contract the said defendant union has caused a breach by such employer or contractor or employing-unit; that plaintiff union is unable to call a strike to protect such breaking of contracts of such employing units, in that under the rules and regulations of the American Federation of Labor, and the plaintiff union strikes may be called only where the fault lies with the employing unit, or where other unions are not employed on their particular trade, and other such instances, and a strike may not be called where the fault in breaking such contracts lies outside the control of the employing unit, as in, this case, in that the controversy between plaintiff and defendant is known as a 'jurisdictional' dispute, and is not such as the employing unit might control.

"That such jurisdictional dispute between plaintiff and defendant unions is such that plaintiff has lost contracts for the employment of members of their union in their particular trade, and the members have lost work in the building, hanging and/or erecting of signs in the City of Houston and vicinity, to which work and contracts plaintiff union is entitled, and which previously have been in force, and which contracts would now be in force or would have been extended, had it not been for the interference therewith by said defendant union."

This pleading lacks the indispensable requisites of an acceptable bill for injunction, as thus laid down by our Supreme Court in Gillis v. Rosenheimer, 64 Tex. 243: "* * * The rule of pleading, that the statements of a party are to be taken most strongly against himself, is re-inforced in injunction suits by the further requirement that the material and essential elements which entitle him to relief shall be sufficiently certain to negative every reasonable inference arising upon the facts so stated, from which it might be deduced that he might not, under other supposable facts connected with the subject, thus be entitled to relief."

There has followed that cardinal declaration a train of amplifying holdings from our Courts, to the effect that the averments of fact must be affirmatively direct, certain, and particular, unmixed with any conclusions of the pleader of either fact or law, some of them being these: Hood v. Scott, Tex.Civ.App., 67 S.W.2d 909; Houghton v. Brungardt, Tex.Civ.App., 89 S.W.2d 440; City of Paris v. Sturgeon, 50 Tex.Civ.App. 519, 110 S.W. 459; Pearson v. Black, Tex.Civ.App., 106 S.W.2d 787; Plough v. Moore, Tex.Civ.App., 56 S.W.2d 681; Town of Refugio v. Strauch, Tex. Com.App., 29 S.W.2d 1041; Royal Fraternal Union v. Lundy, 51 Tex.Civ.App. 637, 113 S.W. 185; Smith et al. v. Texas Farm, etc., Tex.Civ.App., 86 S.W.2d 52, affirmed, 128 Tex. 171, 96 S.W.2d 290; Sneed v. Ellison, Tex.Civ.App. 116 S.W.2d 864; and Wood v. Farm & Home, etc., Tex.Civ.App., 86 S.W.2d 871.

A comparison of the allegations here with those in Hood v. Scott, supra, show well-nigh a legal equivalent in the absence of the required particularity and direct statement of fact that could properly give a court of equity a hand-hold; for instance, there is (1) no naming, describing, nor identification otherwise, of the employers and contractors the appellee is alleged to have notified that it would not thereafter wire any signs having electrical equipment therein unless the same had also been erected and hung by itself; (2) there is no naming of the appellant's members who are alleged to have lost their jobs, contracts, and work, because the respective employers have been coerced into permitting the appellee to re-erect their signs, nor are such "respective employers either named or described"; (3) as part and parcel of the general averment, in purport, that the appellee has trespassed upon the sign-hanging jurisdiction of the appellant to the extent of depriving it of about eighty-five per cent of all the business otherwise open to it, there is no specification whatever of any particular contract, piece of business, or sign-hanging of any sort, that has been so taken away from appellant by the appellee; (4) there is no naming, identifying, nor otherwise classifying, of the "employers and contractors" who are alleged to have been compelled to permit the appellee to do the work ordinarily and customarily theretofore done by the appellant's members; (5) there is neither a naming nor other designation of the particular members of appellant's union who are alleged to have lost numerous contracts

in Houston because of any act of the appellee, nor is there any pointing out whatever of the "employers and contractors" alleged to have been caused to breach their contracts with the appellant, nor are any such contracts in anyway identified.

Without further analysis, it seems plain to this Court that, under its established principles and practice, equity will not undertake the exercise of such a disembodied jurisdiction as is thus invited; on the contrary; it must always have something concrete, tangible, and specific, to which it may apply its power; that has not been afforded in this instance, and as the Waco court remarked in the cited Hood case, supra, if an injunction-writ had been issued on this pleading, any officer who in good faith desired to obey it would have had great difficulty in recognizing either the persons or the things against which it was directed.

Indeed, when reduced to its ultimate purport and effect, this petition amounted in finality to little if any more than a seeking of restraint against alleged declarations of the appellee, to the effect.that it would not in the future apply its electrical wiring and other services to any signs that it did not itself erect and hang; as was held by the Court of Appeals of New York in Nann v. Raimist, 255 N.Y. 307, 174 N.E. 690, 691, 73 A.L.R. 669, through the lamented Chief Judge Cardozo, who subsequently became an Associate Justice of the Supreme Court of the United States, the "remedy by injunction against words is exceptional one, and is to be reserved for those cases where exigency is clear."

These conclusions require an affirmance of the appealed-from judgment; it will be so ordered.

Affirmed.

## On Motion for Rehearing.

In their motion for rehearing appellants earnestly challenge No. (1) of this Court's five specifications, in which their pleading was held to lack the required particularity and direct statement of fact that could properly give a court of equity a hand-hold, by citing Paragraph XIX of their petition as specifically naming the Galveston-Houston Breweries as one of such employers, who was so named; adding, "that such allegation as to a definite and particular contract with such employing-unit, Galveston-Houston Breweries, which concern is a legal entity and is one of the contracting employers referred to by appellants, is sufficient upon which to base a cause-of-action for injunction".

■ The vice in this contention is that, while such concern was named in that paragraph, it was only incidentally mentioned as matter of inducement in alleging the appellant's damages as a result of such acts, and was stated to have already occurred—that is, "that it has caused the cancellation of a working-agreement between plaintiff union and the Galveston-Houston Breweries," no injunctive-relief whatever being predicated upon such then-past act; indeed, the prayer for the temporary injunctive-relief sought was specifically limited to "restraining the defendant from interfering with contracts of plaintiff-union now in existence". Obviously this specification adds nothing of substance whatever to the otherwise defective averments, so originally pointed out by this Court; nor, in the circumstances and setting in which it so appeared, did it in anywise strengthen the declaration for injunctive-relief, since "the purpose of such a writ is to prevent wrongful acts threatened, or in the course of accomplishment, and not to grant relief against past actionable wrongs, or future ones that are not imminent". 24 Tex.Jur., par. 4, page 12; Wright v. Wright, Tex.Civ.App., 278 S.W. 925; also 24 Tex.Jur., par. 106, page 147, and authorities cited under foot-notes 5 and 6.

The motion has been carefully considered, but under the conclusion that the cause was properly decided on former hearing, it will be overruled.

Motion refused.

## On Appellant's Motion for Leave to File Second Motion for Rehearing.

This court's Rule No. VI is as follows: "Rule VI—Second Motions for Rehearing: The filing of second motions for rehearing in causes will not be permitted, except in instances of emergency, the emergency to be stated under oath in the application."

■ Appellant has in no manner met that requirement in this its third successive application to this court for a hearing of its appeal in this cause; it was accorded two painstaking reviews of the trial court's action in refusing it a temporary-injunction, with written opinions delivered upon each, the first one upon original hearing on November 9, 1939, the second on February 29, 1940. In addition, its appeal herein was only from the order of the trial court denying its interlocutory application

for a temporary-injunction, in a suit for damages that had never been tried on its merits below, and which, presumably, is still pending there; in so appealing from that order, it invoked the acceleration-privileges available to it under R.S. Art. 4662, both in getting into this Court within 20 days after the entry of such order below, and in securing its advancement here over all other causes for an immediate consideration, which was, as recited, accorded it under full hearings both on oral argument and on briefs; thereafter, in similar manner, and in compliance with prescribed procedure, its first motion for rehearing was also considered and determined.

It therefore has more than had its day in court upon the appeal it so took; furthermore, it now mistakes the reaches of the jurisdiction and procedure it so invoked, in that, contrary to the assertions of its present motion, there was nothing before considered or determined by this court, except the appeal from the refusal of the temporary-injunction, which in no manner had to do with any other feature of the cause below out of which that order proceeded.

Motion to file second motion for rehearing will, therefore, be refused.

Motion refused.