## THE CITY OF UNIONVILLE, Appellant, v. W. B. MARTIN et al., Respondents.

**Kansas City Court of Appeals, April 7, 1902.**

1. **Municipal Corporations:** PLEADING: ORDINANCE. Though a petition by a municipality fails to plead an ordinance authorizing the contract set up therein, yet the existence of such ordinance is implied.

2. ————: PUBLIC WELLS: LEGISLATIVE POWER. Cities of the fourth class have power to establish waterworks and public wells, but all these matters must be accomplished by an ordinance and can not be delegated to others.

3. ————: CONSTRUCTION OF CHARTER: EXECUTION OF POWER. A city charter is in the nature of the power of an attorney, and the powers conferred can only be executed in the particular way pointed out therein.

4. ———: UNAUTHORIZED CONTRACT: RATIFICATION: ORDI-NANCE. The mayor of a city, without an ordinance authorizing the act, made a contract for the sinking of a well. The board of aldermen, without an ordinance, ordered payments on the contract. *Held*, this did not amount to a ratification, since the board could not authorize the making of the contract save by an ordinance signed by the mayor, neither could it ratify it save in the same manner.

5. ———: ———: ESTOPPEL. Although a municipality may be estopped to deny a contract which it has authority to make, yet such doctrine can not be invoked against it to validate a contract which it had no authority to make.

6. ———: ———: ———: MUTUALITY. Mutuality is usually the essence of the estoppel, but such rule is not always applicable in cases of municipal corporations, where, under an unauthorized contract, the other party has received money which he should not retain, but such exception will not make the contractor liable for forfeitures and for attorneys' fees provided in such contract.

7. ———: CONTRACTS: PREVENTION OF PERFORMANCE. An issue as to the prevention by a city of the performance of a contract is held to have been fairly submitted by the instructions, and the finding is affirmed.

## Appeal from Johnson Circuit Court.—*Hon. W. L. Jar-rott, Judge.*

AFFIRMED.

*John McKinley, Marshall & Franklin* and *Barnett & Barnett* for appellant.

(1.) The officers of the city had no power or authority to prevent Martin from carrying out his contract, and did not do so. Under Martin's own testimony there is no pretense that the officers forcibly interfered and carried away the casing to have it perforated. The meaning and effect of his testimony is that he reluctantly yielded to their request to have the casing perforated. He could have prevented it if he had insisted. Hence, the peremptory instruction should have been given. (2) The perforating of the casing

by agreement between the city and Martin did not constitute an alteration of the contract, or a departure from the plans and specifications, but was a method adopted of securing and saving the water, and was in nowise prohibited by the contract, but is a matter which might be contemplated by the contract.   Western Bldg. Ass'n v. Fitzmaurice, 7 Mo. App. 283.   (3)   The city can neither make nor waive a contract by parol.   It can only contract in writing in the manner prescribed by law.   No statement made by city officers could amount to an alteration of the written contract in question.   See section 6759, R. S. 1899; Crutchfield v. Warrensburg, 30 Mo. App. 456; Taylor v. School District, 60 Mo. App. 372; May v. Crawford, 150 Mo. 504; Mayor v. Sonnebarn, 113 N. Y. 423.   (4)   The court erred in refusing instruction 8, asked by plaintiff.   The $10 per day and the attorney's fees are specially provided for in the contract, and are legitimate items of damage under the contract and bond.   Tinkham v. Satori, 44 Mo. App. 659.   (5)   If said contract was invalid when executed, because the city had not power to make it, or that it was not made in the manner prescribed by law, yet defendants can only be heard to assert its invalidity while the same is wholly executory, and can not avail themselves of the defense of its invalidity after the same has been partly executed and defendant has received money thereon.   City of St. Louis v. Davidson, 102 Mo. 149; Biglow v. Estoppel (5 Ed.) 465; Railroad v. Railroad, 10 Shaw 464; Mayor v. Harrison, 30 N. J. L. 73; Middleton v. City of Elkhart, 120 Ind. 166; Hendersonville v. Price, 96 N. C. 423; Van Hook v. Whitlock, 26 Wend. 43; City of Burlington v. Gilbert, 31 Iowa 356; Daniel v. Terry, 102 U. S. 415; Ferguson v. Landram, 5 Bush (Ky.) 230.

*John Cashman* and *J. W. Suddath* for respondents.

(1) If the judgment be for the right party, even though error is committed in the trial, the cause will not be reversed. Comfort v. Ballingal, 134 Mo. 281; Miller v. Lange, 84 Mo. App. 219; Sebree v. Patterson, 92 Mo. 451. (2) The judgment should be affirmed for the reasons there was no ordinance authorizing the contract; the bond was not approved by the mayor as required by law; the petition pleads no ordinance and at the trial plaintiff admitted that there was no ordinance. The contract was therefore void. Laws 1893, p. 90, sec. 108, subdiv. 2; Stuebner v. St. Joseph, 81 Mo. App. 273; Rives v. City of Columbia, 80 Mo. App. 173; Kolkmeyer & Co. v. City of Jefferson, 75 Mo. App. 678; City of Carthage v. Badgley, 73 Mo. App. 123; Maudlin v. City of Trenton, 67 Mo. App. 452; City of Poplar Bluff v. Hoag, 62 Mo. App. 672; Wheeler v. City of Poplar Bluff, 149 Mo. 36; Cape Girardeau v. Fougeu, 30 Mo. App. 551; Werth v. City of Springfield, 22 Mo. App. 12; City to use v. Eddy, 123 Mo. 546; Eichenlaub v. The City of St. Joseph, 113 Mo. 395; Moore v. City of Cape Girardeau, 103 Mo. 470; Heidelberg v. St. Francois Co., 100 Mo. 69; Stewart v. City of Clinton, 79 Mo. 603; Werth v. City of Springfield, 78 Mo. 107; Thomson v. City of Boonville, 61 Mo. 282; Saxton v. City of St. Joseph, 60 Mo. 153; Saxton v. Beach, 50 Mo. 488. (3) The assent of a municipal corporation to the variation or modification of a contract need not necessarily be expressed by the formal action or resolution of the council; but it may be implied from acts relating to the contract work subsequent to the date of the contract. 1 Dillon (4 Ed.), secs. 451-459; Robinson v. St. Louis, 28 Mo. 488; Litchfield v. Bollon, 114 U. S. 190; Nashville v. Toney, 10 Lea. 643. (4) A municipal corporation may ratify the unauthorized acts and contracts of its agents and officers which are within the scope of its corporate powers. Devers v. Howard, 88 Mo. App. 253; Water Co. v. City of Aurora, 129 Mo. 540; State ex rel. v.

Milling Co., 156 Mo. 620.   (5)   "Strong evidence of
the assent of the corporation is not required."   Water
Co. v. City of Aurora, 129 Mo. 540; 1 Dillon on Munic-
ipal Corp. (4 Ed.), sec 464.   (6)   "The only ratifica-
tion necessary would be acceptance of the work and
payment for same."   Devers v. Howard, 88 Mo. App.
253.   (7)   The city is bound by the acts of the com-
mittee done in the supervision of the work of having
the well-casing perforated. 1 Dillon on Municipal Cor-
porations (4 Ed.), secs. 445-450; Duncombe v. City of
Ft. Dodge, 38 Iowa 281; Fleckner v. Bank, 8 Wheat (U.
S.), 338.   (8)   The city of Unionville ratified the acts
of the committee by paying for perforating the well-
casing.   This made the city liable for the consequences
resulting from the perforation of the casing.   1 Dillon
(4 Ed.), sec. 463.   (9)   If Martin is estopped from
denying the validity of the contract with the city on
account of irregularity of the proceedings of the city
in making the contract, then the city is estopped from
setting up a non-liability for having perforated the cas-
ing by a like irregular manner of proceedings.   Mu-
tuality is a necessary ingredient of an estoppel. Hemp-
stead v. Easton, 33 Mo. 142; Schenck v. Stumpf, 6 Mo.
App. 381; Carondelet v. St. Louis, 29 Mo. 527; State
ex rel v. Murphy, 134 Mo. 548.   (10)   "Where a mu-
nicipal corporation enters into a contract, which it has
the power to make, the doctrine of estoppel applies to it
with same force as to individuals."   Union Depot Co.
v. St. Louis, 76 Mo. 393; State ex rel. v. Murphy, 134
Mo. 548.

SMITH, P. J.—The plaintiff, a city of the fourth
class, entered into a written contract with defendant
Martin whereby the latter undertook to bore a well for
the former.   The latter, with his co-defendants as sure-
ties, further entered into a bond to such former in the
sum of three thousand dollars, conditioned for the
faithful performance of said contract and to refund all

moneys advanced to the latter by such former in case
of a refusal, failure or neglect to complete the work
specified in said contract.

This is an action on said bond to recover the pen-
alty thereof.    The petition alleges that defendant Mar-
tin begun the work under said contract, and after drill-
ing a hole about seven hundred feet, abandoned the
said contract and left the work in an incomplete and
unfinished condition. It further alleges that during the
progress of the work the plaintiff from time to time
advanced to defendant Martin on said contract, various
amounts of money aggregating $1,472.75, which he has
refused to refund although requested so to do.    It was
still further therein alleged that by the terms of said
contract, defendant Martin bound himself to complete
the work therein specified within one hundred and
eighty days from May 15, 1896, and to pay the plain-
tiff the sum of two dollars a day as a forfeit for each
day that should occur between the expiration of said
period and the completion of the work, and that the
number of days that said work had remained incom-
plete after the expiration of said period were far more
than sufficient to make the amount of the forfeiture ex-
ceed three thousand dollars.    There was also a still
further allegation to the effect that under the contract
the defendants were liable to pay an attorneys' fee for
the prosecution of the action which was reasonably
worth three hundred dollars.    Judgment was de-
manded for three thousand dollars, the penalty on the
bond, etc.

Separate answers were filed by defendant Martin
and the other defendants, the sureties.    The answer of
the former admitted the execution of the contract and
bond, but pleaded that the contract was illegal and void.
There was pleaded also the further defense that dur-
ing the progress of the work the plaintiff, against the
objections of defendant Martin and contrary to the

provisions of said contract, caused about one hundred feet of the steel casing, which was used to form the lining of the well, to be perforated by drilling holes therein in such a way as left the interior of said casing with rough edges and beards protruding therein so that the ropes used in drilling the well were thereby cut, and the drill, which was of enormous weight, dropped to the bottom of the well—a distance of over seven hundred feet; and that by reason of such perforations, water, sand and gravel flowed through the same and settled upon the said drill and apparatus, rendering it impossible to extricate the same or to further prosecute the work; and that in consequence of such unwarranted interference by plaintiff, defendant Martin was prevented from fully complying with the said contract, etc. A counterclaim was also pleaded.

The separate answer of the surety defendants admitted the execution of the contract and bond, and alleged that the plaintiff had no authority in law to make the former or to accept the latter of these instruments, and that therefore the same were void. It was therein further pleaded that defendant Martin by reason of the interference of the plaintiff with the execution of the contract by said Martin, was prevented from completing the work thereunder; and that such interference was without their knowledge or consent; and that by reason thereof they were discharged, etc. The replication was a general denial. There was a trial resulting in judgment for defendants and plaintiff appealed.

It was disclosed by the evidence adduced at the trial that a proposition authorizing plaintiff to borrow a certain sum of money with which to erect a combined system of electric light and waterworks had been submitted to the qualified voters of plaintiff city and carried by a two-thirds majority. It was further disclosed that an ordinance had been passed providing for the issue of bonds and to authorize the reception of bids therefor. It further appeared from the journal

kept by the board of aldermen of plaintiff city, that it had been ordered by that body that the bond (here sued on) "be approved." No ordinance authorizing the contract for doing the work was introduced in evidence. It is in effect conceded that no such ordinance was passed by the board of aldermen and approved by the mayor. The case thus presented is that when the contract was entered into between the mayor and defendant Martin there was not as much as a semblance of an ordinance authorizing the same; and the question which confronts us at the outset is whether or not the contract thus entered into is valid. It is true that the petition does not plead the existence of an ordinance authorizing the contract, but this is implied: Werth v. Springfield, 78 Mo. 107.

The plaintiff as a city of the fourth class had power, under several acts of the Legislature, to erect, maintain and operate waterworks. Sess. Acts, 1891, p. 67; Sess. Acts 1893, p. 60; Sess. Acts 1895, p. 81. And to establish and make public wells. Sess. Acts 1895, p. 65.

By section 106 of the last-cited act, it was provided that for any of the purposes mentioned in the preceding sections, the board of aldermen (of cities of the fourth class) should have power to enact all necessary ordinances, etc., and should have power to enact all such ordinances as might be expedient for maintaining the peace, good government and welfare of the city, etc. And by another section of the act (28) the duties and powers of the officers of every character connected with the city government were required to be prescribed by ordinance. From these and other sections of the act it is clear that the jurisdiction over the matter of contracting for the boring of a public well was in the mayor and board of aldermen, and that the manner of exercising such jurisdiction was to be by ordinance *and not otherwise;* and, therefore, the act of the mayor in entering into the contract in question was not

the act of the plaintiff. The rule is, that the charter of a city is in the nature of a power of attorney, and the authority conferred by it must be carried out in the manner prescribed by it. Where it requires the passage of an ordinance—a legislative act—by the mayor and aldermen to accomplish the object, that power can not be delegated to others. Ruggles v. Collier, 43 Mo. 353; Thomson v. Boonville, 61 Mo. 282; Stewart v. Clinton, 79 Mo. 603; Rowland v. Gallatin, 75 Mo. 134; Nevada v. Eddy, 123 Mo. 546; Moore v. Cape Girardeau, 103 Mo. 470; Wheeler v. Poplar Bluff, 149 Mo. 36; Rumsey Mfg. Co. v. Schell City, 21 Mo. App. 175; Beatty v. St. Joseph, 57 Mo. App. 251; Gehling v. St. Joseph, 49 Mo. App. 430; Poplar Bluff v. Hoag, 62 Mo. App. 672; Maudlin v. Trenton, 67 Mo. App. 452; McQuiddy v. Brannock, 70 Mo. App. 535; Kolkmeyer v. City of Jefferson, 75 Mo. App. 678, loc. cit. 683. In the last-cited case it was said by us: "When special powers are conferred, or where a special method is prescribed for the exercise and execution of a power, this brings the exercise of such power within the provision of the maxim *expressio unius,* etc., and by necessary implication forbids and renders nugatory the doing of the thing specified, *except in the particular way pointed out.*" Heidelberg v. St. Francois Co., 100 Mo. 69; McKissick v. Mt. Pleasant Twp., 48 Mo. App. 416. The contract in the present case having been entered into with defendant Martin without the authority of an ordinance, was an act which could not bind the plaintiff.

But it is insisted that the plaintiff subsequently ratified this unauthorized act of its mayor by the action of its board of aldermen in making payments on the contract to defendant Martin, the contractor. But these payments appear to have been made, not under any ordinance appropriating the same out of any fund, but upon the simple direction of the board of aldermen entered on its journal. The board of aldermen could

not itself pass an ordinance, authorizing the making of the contract, that would be valid without the concurrence of the mayor. Kolkmeyer v. Jefferson City, ante; Eichenlaub v. St. Joseph, 113 Mo. 395. It is well settled that a municipal corporation may ratify such unauthorized acts and contracts of its officers as are within the scope of the corporate powers, *but not otherwise*. In State ex rel. v. Milling Co., 156 Mo. loc. cit. 643, an excerpt is quoted with approval from section 170 of Tiedeman on Corporations, to the effect: "When the statute prescribes a special mode in which alone a valid contract can be made by the municipality, and the contract is invalid because of non-compliance with the statutory requirement, *it must be observed in any act of ratification*. Thus, where a corporation could *only make a valid contract by ordinance, the ratification is required* to be by ordinance."

In the case just cited there was no statute requiring the contract to be made by ordinance, nor was any such ordinance passed, but there was subsequently an ordinance passed ratifying and curing any defect in the execution of the agreement had it been lacking in that regard; and so it is plain that that case is not analogous to this. And as no ordinance had been passed in this case authorizing the mayor to make the contract, the board of aldermen had no more power than the mayor, and could not ratify the exercise of an authority which it did not itself have. Dillon on Munic. Corp., sec. 465; Maupin v. Franklin Co., 67 Mo. 330; Johnson v. School Dist., 67 Mo. 319; McKissick v. Mt. Pleasant Twp., ante; Kolkmeyer v. Jefferson, ante; Water Co. v. Aurora, 129 Mo. loc. cit. 583.

In the last-cited case an ordinance had been passed which, with the acceptance by the grantee, constituted a completed contract *infra vires* the corporation, and the ratification related, not to the execution of the contract, but to the acceptance of the work "done under full sanction of legitimate authority." But that case

differs from this in that there the contract was made under an ordinance authorizing it, while here there was no such ordinance. The two cases were therefore quite unlike. This case, reduced to its last analysis, is that where there was no ordinance conferring power on the mayor to make the contract and no ratification of his unauthorized action in such a way as to cure the original defect or want of authority in the mayor to execute the contract.

But it is contended that the defendants are estopped to controvert the validity of the contract, because of the facts conceded by the pleadings and disclosed by the evidence. It is quite well settled in this State that when a municipal corporation enters into a contract which it has authority to make, that the doctrine of estoppel applies to it with the same force as against individuals. Union Depot v. St. Louis, 76 Mo. 393; Wheeler v. City of Poplar Bluff, 149 Mo. 36, was where there was no ordinance passed authorizing a certain street improvement to be made. A contract was entered into, and the improvement made in accordance therewith, was accepted by the city. The action was to recover the contract price for the work. It was contended that as the work had been done according to the contract, and that the city had received it and derived benefits, hence, it should be estopped from denying the validity of the contract. In answer to this contention it was said by the court, in the course of the opinion that "whatever the rule may be elsewhere, it has been ruled by this court that the doctrine of estoppel can not be applied to validate a contract which the corporation had no power to make." State v. Murphy, 134 Mo. loc. cit. 567; Heidelberg v. St. Francois Co., ante. It is clear from the cases to which we have referred that even though a municipal corporation receive the benefits to be derived from the performance of an invalid contract, it is not estopped to recede therefrom, or to deny the validity thereof; or, in other

words, the doctrine of estoppel can not be invoked against the corporation to validate a contract which it had no authority to make.

But when the other party to the contract—not the corporation—has derived benefits from it, will he be estopped to dispute its validity? Can the doctrine of estoppel be invoked against such party by the corporation? The principle is elementary that no kind of an estoppel can be binding upon one party unless the other is equally bound. Mutuality is an essential ingredient of every estoppel. Herman on Estoppel, secs. 889, 793; Bigelow on Estoppel, 512; Hempstead v. Easton, 33 Mo. 142; Schenck v. Stumpf, 6 Mo. App. 381; Saulsbury v. Corwin, 40 Mo. App. 373.

But it seems that this well-established principle is not of universal application, for in City of St. Louis v. Davidson, 102 Mo. 149—a case in many of its salient features similar to this—it was declared that, "though a city might successfully interpose the plea of *ultra vires* when sued upon a contract, yet it does not thence follow that a party who contracted with such city can, when sued on the contract, successfully interpose the plea of incapacity on the part of the city to make such contract, such contract not being illegal, i. e., neither permitted nor prohibited by the charter of the city. And where "the principal in such contract has derived benefits under it, he can not retain those benefits and repudiate the source from which they sprang by denying the validity of the contract on which they originated. In short, he is estopped to grasp the benefits of that contract with one eager hand, while thrusting aside its burdens with the other." We have been unable to find that the ruling in this case has anywhere been impugned, hence, we must accept it as conclusive. It follows, therefore, that if the defendant had sued the plaintiff on the contract in issue here, the latter could have successfully invoked the doctrine of estoppel, even though it had received the benefits and advantages aris-

ing from the execution of such contract; but since the plaintiff has sued on such contract, the defendant can not invoke the application of that doctrine against it.

We have here the strange anomaly of a case where both parties are claiming damages, the one against the other on account of alleged breaches of an invalid contract, yet, under the rule just stated, the doctrine of estoppel may be invoked by the one but not by the other. It will be seen, by what is further said in the concluding paragraph of that opinion, that by the rule just quoted it is not thereby intended to give "sanction to a municipal corporation leaving the narrow pathway marked out by its charter," nor to "intimate that an *ultra, vires* contract if executory" would be enforced, but that it was thereby merely intended to authorize the enforcement of such contracts by the corporation to the extent of compelling the other party to "disgorge" any money to which, according to "good morals and even-handed justice" it (the corporation) may under the contract be entitled. We must accordingly conclude that the contract is valid and binding on defendants and may be enforced to the extent of compelling them to "disgorge" any amount of money received by defendant Martin which *ex aequo et bono* belongs to plaintiff, or should belong to it; and, further, that the claim for forfeit money and for attorneys' fees can not be recovered. And not only this, but that the defendants' counter claim for damages can not be allowed.

There is nothing seen in the evidence to authorize the submission of the special defense pleaded by the sureties, so far as it differs from that of defendant Martin. The pleadings admit that defendant Martin received the aggregate sum of $1,472.75 on the contract, and that he did not fully perform the contract. The only issue, therefore, in the case was whether or not performance was prevented by the interference of the plaintiff. This issue was very fairly submitted by the

instructions given for both plaintiff and defendants. No error is perceived in the action of the court in the giving or refusing instructions.

We discover no sufficient grounds for disturbing the judgment which must accordingly be affirmed. All concur.