## CITY OF FORT WORTH v. FIRST BAPTIST CHURCH OF FORT WORTH.
### (No. 1148.)

(Court of Civil Appeals of Texas. Fort Worth. Oct. 25, 1924. Rehearing Denied Dec. 6, 1924.)

**1. Appeal and error ⬥374(4)—City held not required to give bond to appeal from order granting temporary injunction.**

Under Fort Worth City Charter, c. 11, § 3, such city need not give bond to appeal from order granting temporary injunction, under Rev. St. art. 4644, as amended by Acts 36th Leg. (1919) c. 17, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 4644).

**2. Appeal and error ⬥396—Notice of appeal from interlocutory order granting temporary injunction unnecessary.**

To appeal from interlocutory order granting temporary injunction, under Rev. St. art. 4644, as amended by Acts 36th Leg. (1919) c. 17, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 4644), notice of appeal need not be given in court below.

**3. Appeal and error ⬥863—Only petition considered on appeal from order granting temporary injunction without hearing and notice.**

On appeal from order granting temporary injunction without hearing and notice to defendants, only sufficiency of petition can be considered.

**4. Injunction ⬥118(1)—Pleading ⬥34(4)—Elements entitling plaintiff to relief must be stated with sufficient certainty to negative every reasonable inference to contrary.**

In injunction suits, statements in petition must not only be taken most strongly against pleader, but material and essential elements entitling him to relief must be sufficiently certain to negative every reasonable inference from facts stated that he might not be entitled to relief under other supposable facts connected with subject.

**5. Pleading ⬥34(2)—General allegations subordinated to specific allegations.**

All general allegations of petition must be subordinated to specific allegations.

**6. Injunction ⬥118(1) — Petition based on contract with mayor to furnish water to plaintiff free of cost, held insufficient as not showing mayor's power to make contract.**

Petition, basing right for injunctive relief on contract with mayor to furnish water to plaintiff church free of cost, held insufficient, as not showing who were authorized mayor and persons representing plaintiff when contract was made, whether city was acting under special charter or general statutes, nor mayor's power to enter into contract.

**7. Municipal corporations ⬥230—Mayor held not authorized to contract to furnish water free to church.**

Mayor of Forth Worth has no power, under Fort Worth City Charter, c. 2, §§ 16, 17, 27, or city ordinances, to make contract to furnish water to church free of charge for use in swimming pool.

**8. Municipal corporations ⬥62—City cannot delegate power to provide and regulate public swimming pools.**

City cannot delegate power to provide public swimming pools to private citizen or corporation for all time, with incidental powers of regulation, fixing fees and prescribing rules of conduct for maintenance of order, health, and safety, etc.

**9. Municipal corporations ⬥62—Authority to commit performance of regulations, as to water supply, to private corporation must be clearly shown.**

Authority of city of Fort Worth to commit to private corporation performance of regulations, entrusted to board of commissioners and water commissioner by Fort Worth City Charter, c. 6, § 1, and city ordinances, with respect to water supply, must be clearly shown.

**10. Municipal corporations ⬥248(3)—Ratification of unauthorized contract must be by formal action.**

City, like individual, may ratify agent's unauthorized contract, within its power to make, but such ratification, to be binding on it, must be by formal action of its governing board.

**11. Injunction ⬥118(1)—Petition not stating time of execution or duration of contract relied on for relief, held insufficient.**

Petition not stating time of execution or duration of contract relied on in suit to enjoin city from cutting off water furnished free of charge for plaintiff church's use in swimming pool, held insufficient, allegations not showing that reasonable time has not already expired.

**12. Municipal corporations ⬥233 — May declare contract not warranted by charter void at any time.**

Municipal corporations cannot cede away or embarrass governmental powers through bylaws or contracts, so as to disable them from performing public duties or controlling municipal affairs in future as they deem best, but council have right, at all times, to declare contract not warranted by charter void, and refuse compliance with it.

**13. Estoppel ⬥62(4)—City held not estopped from resisting continuance of unauthorized contract to furnish water free to church, though latter furnished free use of auditorium.**

That church furnished auditorium for free use of city for public meetings, does not estop city from resisting execution or continuance of contract, not within its powers, to furnish water to church free of charge for use in swimming pool, in absence of allegation that auditorium was furnished as part of consideration of contract, or with full knowledge of city commissioners.

Appeal from District Court, Tarrant County; H. S. Lattimore, Judge.

Suit by the First Baptist Church of Fort Worth against the City of Fort Worth and another. From an order granting injunction,

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

defendant City appeals. Reversed, and writ canceled and set aside.

R. E. Rouer and Gillis Johnson, both of Fort Worth, for appellant.

B. F. Bouldin and Slay, Simon & Smith, all of Fort Worth (Phillips, Trammell & Chizum, of Fort Worth, counsel on appeal only), for appellee.

CONNER, C. J. This is an appeal from an order of the Honorable H. S. Lattimore, Judge of Sixth District Court, granting to the appellee, the First Baptist Church of Fort Worth, a writ enjoining the city of Fort Worth and John Alderman, acting water commissioner of said city, from in any way cutting off or interfering with the free and continuous use of water from its sources of supply, alleged to have been heretofore furnished free of charge for use by the appellee church in operating or conducting a swimming pool.

It is alleged that the plaintiff church is a religious association, duly incorporated under the laws of Texas, and having its principal place of business located in the city of Fort Worth; that the church consisted of several thousand members residing in and adjacent to the city; that the city is a municipal corporation, of which John Alderman is the present acting water commissioner; that the First Baptist Church owns lots 2 and 3 in block 75 of the city of Fort Worth, on which is located what is known as the Sunday school building of the First Baptist Church, in the basement of which building is located what is known as the "swimming pools of the First Baptist Church, which said swimming pools had been constructed and used and occupied by said church for a number of years prior to this time."

Paragraph 3 of the petition reads as follows:

"Plaintiff would further show to the court that before said swimming pools were built, the then mayor of the city of Fort Worth agreed with the said First Baptist church, through its servants, agents, and members, that if said swimming pools were constructed and completed by the said church, and used free by the members of the said church and Sunday school and the citizens of Fort Worth, that the city of Fort Worth would furnish to it water, and would not require the church to pay for said water so furnished for said purposes."

It was further alleged that the said swimming pools have been used for the benefit of the said church, its members, and the members of said Sunday school, and for the benefit of the citizens of Fort Worth—

"for these several years, since the construction thereof, and that the said city in compliance with said agreement has furnished the water for said swimming pools, and has not heretofore required the church to pay for said water."

It was further alleged that said church is a religious institution, conducted for religious and charitable purposes, and for the well-being of the city of Fort Worth in a religious and moral way, and that said church has not charged for the use of said swimming pools anything except for a small incidental fee to pay for the towels and other necessary equipment going with said swimming pools, but that same has been used for the benefit of said church, its members, and for the benefit of the members of said Sunday school, and for the citizens of Fort Worth and surrounding community, and is not using the same, and has not used the same for profit, and that it is to the best interests of the city of Fort Worth and the citizens of said city that the said swimming pools be kept supplied with water, and that the same be allowed to said church members, said Sunday school, and citizens of the city of Fort Worth for bathing purposes in the future as in the past.

It was further alleged that said officer, John Alderman, has threatened and would in fact cut off the water from said pools, and not allow it to be used for the purposes stated, unless the members of said Baptist church pay for said water, and that, unless he is restrained, said church, Sunday school, and the members thereof, and the citizens of Fort Worth "will suffer irreparable loss and injury; and the same will work a great detriment and injury to said church and Sunday school, and to the citizenship of said city."

It was further alleged that the city has an abundant supply of water in Lake Worth, which flows to the city by force of gravity, and that the water supply of the city will not be endangered, nor the city hurt, by continuing to furnish said water to said bathing pools free of charge to the many thousands of people who are connected with the said church and the Sunday school.

The plaintiff church further alleged that for several years it had furnished to the city and citizenship thereof the use and benefit of its auditorium for numerous public gatherings and meetings of all kind; that said use of said auditorium had been a great help and of advantage to the city, and saved it many thousands of dollars—

"which said use was induced and caused largely by reason of the fact that the city of Fort Worth had agreed to furnish and was furnishing water for said swimming pools free of charge, and having accepted and received said profits the city of Fort Worth is now estopped from breaching its said contract, and should be required and compelled to continue to furnish said water under said contract and agreement."

The petition was duly verified, and its prayer for a writ of injunction granted without a hearing, and without notice to the

city or any of its officers, and the city has appealed, as heretofore stated.

[1] It will be necessary for us first to dispose of appellee's contention that this court is without jurisdiction because of the fact that appellant has not given an appeal bond, and for the further fact that the record fails to show that any notice of appeal was given in the court below. By an act of the Thirty-First Legislature of Texas, in 1909, the city of Fort Worth was granted a special charter (Sp. Laws 1909, c. 31), of which, by one of its provisions, the courts are required to take judicial notice. Section 3, c. 11, of that charter, provides that:

"No bond, undertaking or security shall ever be exacted or required of the city of Fort Worth in any suit or in the prosecution of any appeal, writ of error or certiorari in any of the courts of the state of Texas, whether such city be party plaintiff or party defendant, or whether the cause be at law or in equity. But all such actions, suits and proceedings to which said city is a party shall be conducted in the same manner as if the bond, undertaking or security otherwise required had been given."

Article 4644, Revised Civil Statutes of Texas, as amended in chapter 17 of the General Laws of the Thirty-Sixth Legislature (see Vernon's Ann. Civ. St. Supp. 1922, art. 4644), reads:

"Any party or parties to any civil suit wherein a temporary injunction may be granted or refused, or having been granted shall on motion be dissolved, or when motion to dissolve has been overruled under any of the provisions of this title, in term time or in vacation, may appeal from the order or judgment granting or refusing, or dissolving or refusing to dissolve such injunction, to the Court of Civil Appeals having jurisdiction of such appeal; but such appeal shall not have the effect to suspend the order appealed from, unless it shall be so ordered by the court or judge who enters the order; provided, the transcript in such case shall be filed with the clerk of the Court of Civil Appeals not later than twenty days after the entry of record of such order or judgment granting, refusing, dissolving or refusing to dissolve such injunction."

It will be thus seen that, by the express terms of the city charter, the appellant was not required, as a prerequisite to its right to appeal to this court from an order of the district judge granting the writ of injunction, to give a bond.

[2] Nor do we think it necessary as a prerequisite to an exercise of appellant's right of appeal that notice thereof should have been given in the court below. General provisions regulating the right of appeal to this court from final judgments of the district and county courts require that notice of appeal shall be given. But this appeal is from an interlocutory order instead of a final judgment, and it was only by virtue of amendments to the general statutes that appeals from interlocutory judgments in cer-

tain cases, including appeals from orders granting temporary writs of injunction, were allowed.

In Edwards v. Morton, 92 Tex. 152, 46 S. W. 792, where a plaintiff, in whose favor a judgment was rendered with which he was dissatisfied, appealed from the justice court to the county court, our Supreme Court held that in such case no bond was required from the judgment in plaintiff's favor, nor was notice of appeal necessary on the ground that the statutes regulating appeals from justice court to the county court in such a case contained no such requirement.

A similar rule was made by our Supreme Court in the case of Beversdorff v. Dienger, 107 Tex. 88, 174 S. W. 576, in an appeal from the county court to the district court in a probate proceeding. In disposing of the contention that the district court was without jurisdiction because of a want of notice of appeal given in the county court, the case of Edwards v. Morton above cited, was referred to, and it was said:

"Edwards v. Morton stands in our decisions as an emphatic declaration that the statutory mode of appeal provided for a particular class of cases is alone to be consulted for the procedure necessary in the appeal of cases of that class, and where it is silent in respect to the giving of notice of appeal courts have no authority to impose such a requirement as a condition of the right. Nothing else could well be the law, and the strength of the proposition, best revealed by its simple statement, demonstrates its correctness."

The principle so announced was applied by this court in Farwell v. Babcock, 27 Tex. Civ. App. 162, 65 S. W. 509, and in the case of Abilene Tel. & Tel. Co. v. S. W. Tel. & Tel. Co. (Tex. Civ. App.) 185 S. W. 356, where appeals had been prosecuted without notice thereof having been given from orders appointing receivers. Cases more particularly applicable are those of Young v. Dudney (Tex. Civ. App.) 140 S. W. 802, and Birchfield v. Bourland (Tex. Civ. App.) 187 S. W. 422. Both cases, as this, were appeals from orders granting temporary writs of injunction. The first-named case was by the Amarillo Court of Civil Appeals, and the last by this court, both of which distinctly held that in such cases notice of appeal from the order granting a temporary writ of injunction was not necessary in order to give this court jurisdiction. Such rulings being manifestly correct from the fact that the statute which we have above quoted, regulating appeals from interlocutory orders of that kind, provides for no such requirement. The contention that we are without jurisdiction to hear this appeal is accordingly overruled.

[3, 4] This brings us to a consideration of the merits of the appeal, which, in view of the fact that the temporary injunction un-

der consideration was ordered and issued without a hearing, and without notice to appellants, is wholly dependent upon the sufficiency of appellee's petition, and we will accordingly address ourselves to a discussion of this subject. In determining the sufficiency of the appellee's petition, which, in substance, has hereinbefore been set forth, it will be well to first call attention to a well-settled rule of construction, uniformly adhered to by our courts. The rule approved by our Supreme Court in the case of Gillis v. Rosenheimer, 64 Tex. 243, and followed in many subsequent cases that might be cited, is as follows:

"The rule of pleading, that the statements of a party are to be taken most strongly against himself, is re-enforced in injunction suits by the further requirement that the material and essential elements which entitle him to relief shall be sufficiently certain to negative every reasonable inference arising upon the facts so stated, from which it might be deduced that he might not, under other supposable facts connected with the subject, thus be entitled to relief."

. [5, 6] In the case of City of Paris v. Sturgeon, 50 Tex. Civ. App. 519, 110 S. W. 459, it was held by the Court of Civil Appeals for the Sixth District, writ of error denied, that, where the hearing by the judge, as was the case here, is ex parte, and the order is made on the allegations of the petition alone, the court on appeal can consider the petition alone. Adopting the rules so stated, we feel forced to the conclusion that appellee's petition was wholly insufficient to authorize the order commanding the issuance of the writ of injunction from which this appeal has been prosecuted.

Considered as a whole, we think it is evident that the plaintiff in the petition bases its right for the relief sought, upon a contract with the mayor of the city to furnish water for the purposes specified free of cost. The specific allegations in this respect, contained in the above quoted paragraph 3 of the petition (to which all general allegations must be subordinated; see Cavin & Grigsby v. Hill, 83 Tex. 73, 18 S. W. 323; De La Vergne Refrigerating Mach. Co. v. Stahl [Tex. Civ. App.] 54 S. W. 40), seem entirely too vague and uncertain for an injunction of any kind. It does not appear from this paragraph, or any other part of the petition, who was the authorized mayor of the city at the time the contract was made, nor the particular persons representing the church with whom he agreed; nor does it show whether, at the time, the city was acting under a special charter, or under general provisions of the statutes regulating municipal corporations; nor is the date or time of the making of the contract alleged; nor does the petition in any of its parts show what authority or power the mayor had, if any, to enter into such a contract.

[7] As already stated, the city of Fort Worth is acting under a special charter granted by the Legislature in 1909, and if the contract in question was made prior to that date, it cannot be said from the petition that the mayor of the city was authorized to make the contract. If the city was then acting under general municipal regulations, counsel for appellee has pointed to no provision of the statutes giving the mayor of the city any such authority, nor have they cited us to any previous charter under which the city of Fort Worth was acting which would confer any such authority. If the contract was made during the operation of the present charter, it is quite clear that the mayor had no such power.

The charter provides for a board of commissioners, a mayor and other officers, and section 16, c. 2, in so far as necessary to quote, reads:

"Said board of commissioners so constituted shall have control and supervision over all the departments of said city, and to that end shall have the power to make and enforce such rules and regulations as they may see fit and proper for and concerning the organization, management, and operation of all the departments of said city, and whatever agencies may be created for the administration of its affairs. The mayor shall designate from among the commissioners, at the first meeting of the board after their election and qualification, at each election, or as soon thereafter as may be practicable, one commissioner who shall be known as * * * the 'waterworks, sewerage and light commissioner,' who shall be the executive officer of his department, and who shall have under his special charge the construction, maintenance and operation of the water works and sewer and light systems and departments of the city, and shall see to the enforcement of all rules and regulations with respect to said departments and with respect to the revenues pertaining thereto."

Section 27, c. 2, in so far as now applicable, provides that:

"The board of commissioners shall have power, and it shall be their duty, to prescribe by ordinance the powers and duties of all officers of the city whether elected or appointed, where the same have not been provided for in this act, and shall have authority from time to time to add thereto, alter or restrict the same."

The powers of the mayor are specified in section 17, c. 2, of the charter. It is there said:

"The mayor shall be the chief executive officer of the city of Fort Worth, and shall see that all the laws thereof are enforced; he shall be clothed with all the authority that is now or may hereafter be vested in a mayor by general law, so far as the same may be applicable and not in conflict with this act. He shall have and exercise such power, prerogative and authority, acting independent of or in concert with the board of commissioners, as are conferred by the provisions of this act, as may be conferred upon him by the board of

commissioners, not inconsistent with the general purpose and provisions of this charter, and shall have the power to administer oaths, and shall sign all contracts and shall have the right and authority at any time to suspend any officer or employé of the city, subject to the provisions of this act," etc.

In the revised ordinances of the city, it is provided that all ordinances, resolutions, rules, and regulations of the city, in effect at the time of the adoption of the charter under consideration, that are not in conflict or inconsistent with the charter, nor otherwise modified or changed, shall continue in force until the same be altered, amended or abrogated by the board of commissioners. Chapter 12 of the ordinances provides for a superintendent of the city waterworks, and it is declared in section 3 of the chapter that:

"It shall be the duty of the said officer to assume and take charge of the waterworks plant and pipe lines of the said city and to manage and control the same under the supervision of the board of commissioners and especially the supervision of waterworks, sewerage and light commissioner."

Our attention has not been called to any provision of the charter, or to any ordinance of the city as now constituted, or, as at any time heretofore constituted, which would authorize the mayor of the city to make the contract alleged. True, he is given power to execute a contract. But the power to enter into and make a contract is one thing, and the power to execute it, if directed so to do by the board of commissioners, is an altogether different thing. In 28 Cyc., page 463, it is said:

"The executive head of the municipality is the mayor, who is generally also a member of the governing body, and presides over it ex officio. But in the larger cities his functions are purely executive. * * * The powers and duties of the mayor of a city depend entirely on the provisions of the charter, and valid ordinances passed in pursuance thereof, and a municipality cannot by ordinance confer a greater power upon its mayor than that given by charter."

In volume 1 of Dillon's Municipal Corporations, at section 208, it is said:

"Every municipal corporation is provided with an executive head, usually styled the mayor. * * * All his powers and duties depend entirely upon the provisions of the charter or constituent acts of the corporation, and valid by-laws passed in pursuance thereof."

In the case of Bigby v. City of Tyler, 44 Tex. 351, it was held by our Supreme Court that the mayor of the city of Tyler was without authority to try an offense with which named parties were charged, for the reason that no such power in the mayor was to be found in the act incorporating the city.

In the case of City of Galveston v. Hutches (Tex. Civ. App.) 76 S. W. 214, it was held

that where the mayor of a city had been authorized by the resolutions of the council to "make deed," authority in him to bind the city by inserting a warranty was not to be implied, and it was said:

"The mayor of a city has no authority, except what is expressly or impliedly conferred upon him by the charter, or by the city council, acting within the scope of the authority conferred by law, to make a contract binding on the city. The powers and duties of a mayor depend entirely upon the provisions of the charter of the corporation, and valid ordinances or by-laws and resolutions of the council passed in pursuance thereof."

In 19 R. C. L., p. 884, §§ 183 and 184, it is stated, among other things, that:

"All the executive, legislative, and administrative powers of the municipality are concentrated in a commission. * * * The powers of a municipal council must be exercised at a meeting, legally called. Action of all the members of the council separately is not the action of the council."

In the case of City of Tyler v. Adams (Tex. Civ. App.) 62 S. W. 119, it was held that the mayor of the city could not bind it by executing a renewal note given by it, without being authorized to do so by the city council.

[8] From what we have said, and from the authorities quoted, it cannot, with any show of reason or authority, be said that the contract with the mayor, specified in appellee's petition, was an authorized one which the courts are bound to see enforced. In behalf of appellee, however, it is further insisted, in substance, that the city has power to provide for public utilities, and that from allegations in the petition it appears that the city has acquiesced in or ratified the contract with the church. It may be, and it will be conceded, that, under the terms of the charter of the city, the city may lawfully provide public swimming pools for the use and benefit of its citizens, and may contract to that end. But it cannot, under the authorities, delegate, for all time, such power to a private citizen or corporation, together with the incidental powers of regulation, fixing fees or charges, and prescribing rules of conduct for the maintenance of order and the health and safety of its citizens, etc.

[9] In section 1, c. 6, of the Charter it is provided that the board of commissioners shall have power to provide the city with water, or to cause the same to be provided, and for this purpose to make, establish, regulate, and maintain public wells, pumps, artesian wells, cisterns, reservoirs, hydrants, dams, standpipes, water mains, water pipes and water meters, and all such other equipments, property, etc., as may be necessary; and shall have full control of same and of all necessary streams and water sources within and without the city limits, and to prevent the unnecessary waste of water, and

shall have power to appoint officers or agents for the operation thereof "with such power and authority as in the discretion of said board of commissioners may or shall seem, proper," etc.

As we have already seen, the charter provides for a water commissioner, and by the ordinances in title 5, c. 1, it is provided that the waterworks owned and controlled by the city shall constitute a separate and independent department, and the revenues arising therefrom shall be kept separate from other funds, and constitute an interest or sinking fund for the payment of bonds and interest on same. The ordinance further provides that the water shall be measured to consumers by meters, over which the city reserves the right to own and control, and specific rates for the use of water are prescribed, etc. The authority to commit performance of such regulations to a private corporation must be clearly shown.

[10] As stated, it is insisted that the petition shows that the contract with the mayor has been ratified by the city. Ratification may generally be shown, but in the case of City of Bryan v. Page, 51 Tex. 532, 32 Am. Rep. 637, it was held by our Supreme Court that, in the absence of an ordinance conferring that power, the mayor of a city was not authorized to employ attorneys to give a legal opinion touching matters involving the city's interest, and that the subsequent use made of the attorney's opinion by the common council created no legal liability.

In the case of City of Unionville v. Martin, 95 Mo. App. 28, 68 S. W. 605, by the Court of Appeals at Kansas City, Mo., it was held that a contract entered into by the mayor of the city, not authorized by ordinance, for the boring of a well, was not enforceable, and was not ratified by the mere action of the board of aldermen in directing payments to be made thereon, where the payments were not made under any ordinance appropriating the same out of any fund, but on the simple direction of the board of aldermen entered on its journal.

In 31 Cyc. page 1253, it is said:

"As a general rule, in order that a ratification of an unauthorized act or transaction of an agent may be valid and binding, it is essential that the principal have full knowledge, at the time of ratification, of all material facts relative to the unauthorized transaction."

In support of the rule so stated, decisions from many states, including Texas, are cited. It is not alleged in the petition that the board of commissioners had full knowledge of the terms of the contract with the mayor, and that with such knowledge there was any formal act of the board ratifying or confirming the contract. It is undoubtedly true that a city, like an individual, may ratify a contract, within its powers to make, of an agent who acted within prior authorization. But such ratification, to be binding on the city, must be by some formal action of its governing board. To further illustrate, the case of Penn v. City of Laredo (Tex. Civ. App.) 26 S. W. 636, was one in which the mayor of the city contracted with a public newspaper, as the official newspaper of the city, without authority of the council, by ordinance or resolution, and it was held that the city was not liable on the contract, though the council afterwards, without resolution or ordinance, acted thereon.

In the case of Indiana Road-Machine Co. v. City of Sulphur Springs (Tex. Civ. App.) 63 S. W. 908, it was held that the city was not liable on a contract executed in its behalf, where the mayor acted without authority. It is there said:

"General, unofficial knowledge on the part of individual aldermen that some kind of order had been given will not amount to ratification."

In Wagner v. Porter (Tex. Civ. App.) 56 S. W. 560, it was held, by the Galveston Court of Civil Appeals, that the action of the city council, in delegating to the mayor the right to make a certain contract in its behalf, and in ratifying the contract when made, can only be established by the minutes of the meeting when such action was had, and cannot be established by parol testimony, when it does not appear that such record is lost or destroyed.

[11, 12] From these authorities, we think it must be conceded that the allegations of the petition are insufficient to show ratification of the contract with the mayor. No action of the board of commissioners to that effect is alleged or referred to. It is not even alleged that the individual members of the board of commissioners, separately or collectively, with knowledge of all the facts, acquiesced in the action of the water commissioner or the superintendent under whose immediate supervision the water had been furnished. In this connection it may be further observed that, as before noted, the petition fails to state the time of the execution of the contract relied upon, or the length of its duration. If, as is insisted in behalf of appellee, a contract not specifying the time of its continuance must be construed as one extending for a reasonable time, yet, from the allegations of the petition, we are unable to state that the reasonable time of the contract, if any, has not already expired. If the contract has been observed for a reasonable time, the city then may thereafter certainly at its will declare the contract at an end. It certainly cannot be reasonably held that a contract of that character can be valid for all time and a perpetuity thus established. To so hold would be to bind all future boards of commissioners from interference with the contract.

In the case of City of Brenham v. Brenham Water Works, 67 Tex. 542, 4 S. W. 143, our Supreme Court held that a contract by the city with the water company, granting the right for a term of 25 years from the adoption of the ordinance, of supplying the city and its inhabitants with water, was void. In disposing of the case, the court held, in substance, that the power conferred on municipal corporations for public purposes can neither be delegated nor bartered away. That such corporations have no power to cede away or embarrass their legislative or governmental powers, either through the agency, or by-laws, or contracts with others, so as to disable them from the performance of their public duties, or from controlling in the future, as it might deem best, municipal affairs, and that, when a contract is made by a city corporation not warranted by its charter, the city council have at all times the right to declare it void, and to refuse compliance with it. See, also, generally, City of Paris v. Sturgeon, 50 Tex. Civ. App. 519, 110 S. W. 459; Rue v. M. P. Ry. Co., 74 Tex. 474, 8 S. W. 533, 15 Am. St. Rep. 852; Edwards County v. Jennings, 89 Tex. 618, 35 S. W. 1053; Ennis Waterworks v. City of Ennis, 105 Tex. 63, 144 S. W. 930.

[13] The petition discloses that the appellee church has furnished for the free use of the city an auditorium for public meetings of various kinds, but however laudable and to be commended this may be, it is not alleged to be a part of the consideration of the contract, nor that it was so done with full knowledge on the part of the board of city commissioners. So that, it cannot be held, we think, to estop the city from resistance to the execution or continuance of a contract not shown to have been authorized, or within the powers of the city to make.

On the whole, therefore, we finally conclude that the order of the district judge below must be reversed, and the temporary writ of injunction issued by virtue thereof canceled and set aside.