Kurt Wayne Loper v. Carl Jefferies, et al.















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-127-CV

     KURT WAYNE LOPER,
                                                                         Appellant
     v.

     CARL JEFFERIES, ET AL.,
                                                                         Appellees
 

From the 278th District Court
Madison County, Texas
Trial Court # 00-9109-278-10
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Appellant Loper appeals from an order of the trial court denying his motion for temporary
injunction.
      Appellant Loper, an inmate at the Jim Ferguson Unit in Madison County, filed an application
for temporary injunction, informa pauperis pro se, to enjoin Appellees Johnson, Director of
TDCJ-ID and Jefferies, Director of TDCJ-PS, from compelling him to participate in the Sex
Offender Treatment Program (SOTP).
      Appellant alleged he was sentenced to 30 years in 1991 for indecency with a child; that
Appellee Jefferies issued a directive mandating that all sex offenders participate in SOTP within
two years of their scheduled release date; that Appellee Johnson was mandated to carry out the
treatment; that Appellant’s scheduled release date is May 7, 2003; that all participants in the
program are required to disclose all sex offenses as part of the treatment; and that he has a
protected right under the Texas and United States Constitutions to be free from being compelled
to incriminate himself.
      Appellant sought to enjoin Appellees from compelling him to provide evidence that the State
could use against him in future criminal proceedings.
      The trial court set a hearing via a video conference with the Judge in the TDCJ Administration
Building in Huntsville, the Appellant in the Hughes Unit in Gatesville, and the Assistant Attorney
General in Austin.
      At the hearing, Appellant testified that if he participated in the program, he could be forced
to give evidence against himself that could be used in a criminal prosecution. The judge told him
if and when you are required by someone to give evidence against yourself, “don’t do it, claim
your Fifth Amendment Rights.” Appellant further testified that he was not presently in the SOTP
program, but that he was subject to being placed in it. The judge pointed out that only about 15
per year can be put into the program, and that there are about 30,000 sex offenders in the prison
system.
      The trial judge, at the conclusion of the hearing, denied Appellant’s motion for injunctive
relief.
      Appellant appeals presenting two issues.
      Appellant contends that the trial court abused its discretion in denying his application for
injunctive relief.
      Abuse of discretion is determined by whether the court acted without reference to any guiding
principles. Craddock v. Sunshine Bus Lines, 133 S.W.2d 124, 126 (Tex. 1939). Stated another
way: Was the act of the court arbitrary or unreasonable? Smithson v. Cessna Aircraft, Co., 665
S.W.2d 439, 443 (1984).
      The granting or denying of a temporary injunction is generally within the trial court’s
discretion. State v. Walker, 679 S.W.2d 484, 485 (Tex. 1984). A temporary injunction is an
extraordinary remedy and does not issue as a matter of right. The decision to grant or deny a
temporary injunction is in the sound discretion of the trial court, and the court’s grant or denial
is subject to reversal only for a clear abuse of discretion. Walling v. Metcalfe, 863 S.W.2d 56,
58 (Tex. 1993).
      In reviewing an order denying a temporary injunction, we draw all legitimate inferences from
the evidence in the light most favorable to the trial court’s order. State v. Ruiz, 901 S.W.2d 772,
777 (Tex. App.—Austin 1995, no writ).
      A party seeking injunctive relief must plead and prove facts showing that party entitled to such
relief; and the court may deny such relief upon insufficiency of the testimony which may arise
from the testimony offered or from a want of testimony. Sneed v. Ellison, 116 S.W.2d 864, 866
(Tex. App.—Amarillo 1938, writ dism’d).
      Normally, an injunction will not be granted to prevent anticipated Fifth Amendment matters. 
There must be evidence of the necessity for the present use of the injunction. Maverick County
Water District v. City of Laredo, 346 S.W.2d 856, 858 (Tex. App.—San Antonio 1961, n.r.e.);
See also In re Verbois, 10 S.W.3d 825, 828 (Tex. App.—Waco 2000).
      The trial judge at the hearing advised Appellant that he could not be required to give evidence
against himself, and if someone sought to require him to do so, “Don’t do it, the Fifth Amendment
protects you.” There is no evidence that the TDCJ had in fact scheduled Appellant for the SOTP
program or that if he did attend, he would be required to give evidence against himself that is
protected by the Fifth Amendment.
      The trial court did not abuse its discretion in denying Appellant’s motion for a temporary
injunction.
      Appellant further complains of the trial court’s failure to file Findings of Fact and Conclusions
of Law, although timely requested to do so by Appellant. The failure of the trial court to file
Findings of Fact and Conclusions of Law, if error, could not have caused the rendition of an
improper judgment. Rule 44.1, Tex. R. App. P.
      Appellant’s issues and all contentions made thereunder are overruled.
      The judgment is affirmed.

                                                                         FRANK G. McDONALD
                                                                         Chief Justice (Retired)

Before Chief Justice Davis,
      Justice Gray, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed May 30, 2001
Do not publish



ing test as set out by the United States Supreme Court in Barker v. Wingo.


 The
factors to be considered are: (1) the length of the delay; (2) the reason for the delay; (3) the
defendant's assertion of the right; and (4) the prejudice to the defendant resulting from the delay.


 
We will consider each of these factors as applied to the record before us.
Length of Delay
      The length of the delay is measured from the time the defendant is formally accused or
arrested until the time of trial.


 No specific length of delay automatically constitutes a violation
of the right to a speedy trial.


 In the present case, Childs was arrested on August 21, 1990, and
indicted on October 11, 1990. His trial began on May 20, 1991, resulting in a delay of
approximately seven to nine months.
Reason for Delay
      In considering the reason for the delay, different weight should be assigned to different
reasons. Deliberate attempts to hamper the defense weigh heavily against the State, and
circumstances such as missing witnesses will justify a delay, but in most instances the delay will
be caused by more neutral reasons such as overcrowded court dockets, which are weighed less
heavily against the State.



      There is no evidence of any deliberate or intentional acts by the State or the trial court in an
effort to delay Childs' trial. Furthermore, there is no indication in the record that Childs ever
requested a trial setting. 
      On December 12, 1990, Childs' first attorney filed several pre-trial motions, including a
motion to withdraw as counsel. After a pre-trial hearing on January 10, 1991, the motion to
withdraw was granted. The motion indicates that Childs requested that his attorney withdraw from
further representation. Furthermore, Childs testified at the hearing on his motion to dismiss that
he requested a new attorney because he and his original attorney "got into some differences." The
docket sheet, of which the trial court took judicial notice, indicates that on November 15, 1990,
the case was set for a pre-trial hearing on January 10, 1991, for a final pre-trial hearing on January
18, and for a jury trial on January 21. The docket sheet, however, also includes a January 10
notation, following the appointment of a new attorney, that the case was reset for pre-trial
motions. Furthermore, at the hearing on his motion to dismiss, Childs acknowledged that the case
was originally set for trial in January 1991. He also admitted that, on January 10, 1991, he asked
to see a psychologist because his "memory was bad." He argues, however, that his requests had
no effect on the January trial setting.
      On May 20, 1991, immediately before voir dire examination of the jury, Childs filed a pro
se motion to dismiss due to delay. The burden of excusing the delay rests with the State. At the
hearing on Childs' motion to dismiss, the State elicited testimony from Childs in support of the
State's position that any delay in trial could be attributed to his request for a new attorney and his
request to see a psychologist. The State has, therefore, rebutted the presumption that no valid
reason for the delay existed.



Childs' Assertion of His Rights
      A defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in
determining whether the defendant is being deprived of the right. Failure to assert the right,
however, will make it difficult to prove that he was denied a speedy trial.


 Although the record
reflects that several pre-trial hearings were set, there is no evidence in the record that Childs
asserted a speedy trial claim at any time before he filed his pro se motion to dismiss on May 20,
1991. Based on our review of the record before us, it is clear that Childs' prime objective was
not to gain a speedy trial, but was instead to have the charge against him dismissed. Although a
motion to dismiss can notify the State and the court of a speedy trial claim, a defendant's
motivation in asking for dismissal rather than a prompt trial is clearly relevant and may sometimes
attenuate the strength of his claim.



The Prejudice to Childs
      Three interests must be considered when determining prejudice to the defendant: (1) to
prevent oppressive pre-trial incarceration; (2) to minimize anxiety and concern of the accused; and
(3) to limit the possibility that the defense will be impaired.


 Proof of actual prejudice is not
required. The defendant must only make "some showing" that the delay has been prejudicial.



      Childs argues that the excessive delay has impaired his defense because a potential witness,
Jesse Ransom, died after the original January trial setting. According to Childs, Ransom would
have been able to verify Childs' claim that at the time he entered the building it was open to the
public. Although Childs is not required to show that Ransom would have definitely testified in
Childs' favor, he must at least make some showing that Ransom was a "material" witness.


 
Childs has failed to meet this burden. He testified that on August 20 or 21, 1990, he spoke with
Ransom in the washateria, which was in the same building as the convenience store that was
burglarized that night. However, the record is completely void of any evidence that Ransom had
any involvement in Childs' case or that he had any knowledge of Childs' entry into the
convenience store.
Balancing Test
      We must now engage in a difficult and sensitive balancing process in which none of the four
factors alone are either necessary or sufficient to a finding of deprivation of the right to a speedy
trial.


 In this case we find a delay of seven months between the indictment and the trial. 
Although the docket sheet reflects that a trial setting was planned for January 21, 1991, that setting
was apparently passed because Childs requested a new attorney and asked to see a psychologist. 
Further, rather than actively and persistently asserting his right to a speedy trial, Childs sought,
on the day of trial, a dismissal of the charges against him. Finally, Childs has failed to make some
showing of prejudice resulting from the delay. Under the circumstances of the case, we hold that
Childs was not denied his right to a speedy trial.


 We overrule point of error one.
Challenge for Cause
      In point two, Childs contends that the trial court erred in overruling his challenge for cause
of Hummel, a prospective juror. Childs argues that this prospective juror admitted having a bias
or prejudice against a law upon which the defense was entitled to rely.


 According to Childs,
Hummel had a bias against allowing a defendant to remain silent. During the voir dire
examination of the jury panel, the following exchange with Hummel occurred:
[Defense Counsel]: And I guess, getting back to the question, Mr. Hummel, if a
person accused—and you're sitting on this jury panel—doesn't testify and you are
instructed that you cannot consider his silence, even though you may want it, even if you
feel that you may need it to make an important decision, could you follow those
instructions?
 
MR. HUMMEL: I don't guess so because I've always had a problem with that. I'm
ultra conservative. I live a good life, I feel like, and I live within the means of the laws
and never liked liars. And if he can't sit there and tell me, "I didn't do it," I'd have a
problem with it, if he didn't stand up and say, "No, I didn't do it."

At the conclusion of the voir dire, Hummel was examined further at the bench:
[Defense Counsel]: Mr. Hummel, let me thank you for your honesty and your
straightforwardness. That's the kind of responses we like to get from jurors, prospective
jurors. 
 
I wanted to make sure I understood you correctly concerning a defendant's not
testifying and remaining silent. If I understood you correctly, is that you could not keep
his silence out of your—
 
MR. HUMMEL: No, what I said was it affects me.
 
[Defense Counsel]: Okay, affects you. Okay.
 
MR. HUMMEL: And as far as my judgment is concerned, I have a hard time
believing that somebody can sit there all through the trial and never defend himself. If
he's guilty, he guilty. If he's innocent, he's innocent. And if he's innocent, I would
think that somebody would want to get up and say, "I'm innocent." That's just the way
I feel about it.
 
[Defense Counsel]: That's perfectly fine. But if the person didn't testify, would you
assume he was guilty?
 
MR. HUMMEL: No, I didn't say that. I just said I'd have a hard time dealing with
it, if he can't stand up and defend himself.
 
[Defense Counsel]: Okay. If you were instructed that you couldn't consider his
silence, could you follow that instruction?
 
MR. HUMMEL: Well, you asked me that same question earlier, and it's—that's
what I said. It would be hard for me to deal with, for that type of a situation. You're
asking the same question 15 different ways.
 
[Defense Counsel]: Well, yes. I'm trying—because I'm trying to get a little more
definite answer. I mean, it's—I guess I can ask: Will you or will you not?
 
MR. HUMMEL: Well, I will consider all the evidence that's given. And if he's
guilty—I feel like he's guilty, I'm going to vote him guilty. If he's not guilty, I feel like
I could give an impartial judgment on it, based on the evidence that I would hear. Back
in my mind, if he can't stand up and defend himself against the crime that he's been
accused of, I would find it difficult to—
 
[Defense Counsel]: How difficult? We're—assume—
 
MR. HUMMEL: That's based on the judgment—I mean, the evidence that's
provided in the court. I mean, I think that you'd have to be brain dead, a mind full of
mush not to have some kind of considerations, you know. Just like you was asking the
jurors earlier, about if you've been burglarized before, was it going to affect you. It's
going to affect anybody that's been burglarized before to some extent.

. . .
 
MR. HUMMEL: I understand that. He doesn't have to say a word.
 
[Defense Counsel]: But you would want him to say a word if he's saying not—
 
MR. HUMMEL: I would want to, yeah. I would like to hear him say that, "I didn't
do it."
 
[Defense Counsel]: And my question is, then: If he didn't say it, didn't get up and
say, "I didn't do it."
 
MR. HUMMEL: It would have to be entirely based upon the evidence that we hear
out of the courtroom.
 
[Defense Counsel]: No further questions.
 
[Prosecutor]: Mr. Hummel, I'm sorry to keep asking you this, but I just want to
make clear. You're saying, "I have a problem with it; it kind of bothers me that a
defendant may not testify." But although that does bother you, you're not saying that if
the Court instructs you, you can't consider that? You don't know why; there's a lot of
reasons. You're not going to know why. But you can't consider the fact that he didn't
testify. Can you follow that law?
 
MR. HUMMEL: Yeah, I think I could live with that.

      Where a prospective juror states that he can set aside his bias and follow the law, the trial
court's refusal to sustain the defendant's challenge for cause will be reviewed in light of all of the
answers the prospective juror gives.


 When the trial court is faced with a vacillating juror,
elements such as demeanor and tone of voice are important factors in conveying the precise
message intended.


 Therefore, the trial court's decision is accorded great deference.


 Hummel
concluded the voir dire examination by stating that he could follow the instructions given by the
court. Given that the trial judge was in a better position to assess the credibility of Hummel's
responses, we conclude that the court did not abuse its discretion in overruling Childs' challenge
for cause.


 We overrule point of error two.
      We affirm the judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed July 15, 1992
Do not publish